## GEORGE H. LEE *vs.* LEVI KILBURN.

A statement of facts, filed by counsel, cannot be taken into consideration in deciding upon
   a bill of exceptions previously allowed by the judge before whom the case was tried.

A sale of lumber, by an instrument in writing, on condition that the vendor may repur-
   chase it at the same price on or before a certain day, is not a mortgage, and need not
   be recorded, and the right of property, as between vendor and purchaser, passes without
   delivery; and possession of part, taken by the purchaser, though opposed by the vendor,
   before notice to the purchaser or publication of notice of proceedings in insolvency
   against the vendor, though after the issuing of the warrant in insolvency, will complete
   the purchaser's title to all the lumber sold, as against the assignee in insolvency of the
   vendor, if the lumber sold was not part of a larger lot.

Evidence of a custom in a certain town, to sell lumber without previously measuring it,
   is admissible, when material, if the lumber to which it is sought to be applied is not
   shown to have been brought into the town by water, and as such required by the Rev
   Sts. *c.* 28, § 154, to be surveyed and marked.

Lee *v.* Kilburn.

In an action l y the assignee of an insolvent debtor, to recover back property conveyed by
the debtor by way of preference, evidence that, at the time of the conveyance, the
debtor was reputed to be insolvent in the town where he resided, is competent to prove
that the defendant had reasonable cause to believe him insolvent.

A trader is insolvent, within the meaning of *St.* 1841, *c.* 124, § 3, when he is not in a con
dition to pay his debts in the ordinary course, as persons carrying on trade usually do
although his inability be not so great as to compel him to stop business; and although
he may be able to pay all his debts at a future time, upon the winding up of his con·
cerns.

ACTION OF TORT for the conversion of lumber, brought by the
assignee of Davis & Kilburn, insolvent debtors. Answer, prop-
erty in the defendant.

At the trial in the court of common pleas, before *Byington,* J.,
the defendant introduced evidence tending to show a sale of the
lumber to him from Davis & Kilburn on the 12th of June 1852,
by the following instrument: "1852, June 12th. Levi Kil-
burn to Davis & Kilburn, Dr. To 42½ M. ft. lumber at $9 per
M. on the storehouse lot, $382.50. This lumber is sold on the
condition that Davis & Kilburn have the privilege of buying
back the same at the rate of $9 per M., by paying cash for the
same on or before the 1st of August 1852. Received payment,
Davis & Kilburn."

The plaintiff then introduced evidence tending to show that
this sale was made in fraud of the insolvent laws, and with the
intention to give a preference to the defendant, by payment of
a preëxisting debt from Davis & Kilburn to him; that, at the
time of the sale, Davis & Kilburn were insolvent, and the de
fendant had reasonable cause to believe them insolvent.

There was also evidence of the following facts: Davis &
Kilburn were largely engaged in the manufacture of chairs, tubs
and pails, and pine furniture, and the purchase and sale of
lumber. They filed their petition in insolvency on the 27th of
July 1852; a warrant issued to the messenger on the same day ·
and the first publication of notice was on the 2d of August.
At the time of the sale of the lumber, there was no delivery to
or possession taken by the defendant. But the evidence tended
to show that afterwards, between the 26th and the 30th of July
1852, the defendant commenced to take possession of and re-
move the lumber; that while removing it, and before he had

removed much of it, Davis & Kilburn forbade him to take it; and that, after a portion of the lumber had been removed, the messenger entered the yard, forbade the defendant to remove any of the lumber, and claimed to hold it in his capacity as messenger.

The plaintiff contended that the instrument of sale was a mortgage, or on such condition that the law required it to be recorded, to enable the defendant to hold the property under it. But the judge instructed the jury " that, as between the parties to the sale, it was not necessary to its validity, that the property should be delivered at the time of the sale, or the instrument recorded ; but if it was proved there was a sale, and also that the defendant took possession under the sale before the messenger did under the warrant, the fact that the instrument was not ecorded would not render his title invalid as regarded the plaintiff, although Davis & Kilburn objected to the defendant's taking possession at the time he took it."

The defendant, to meet an objection which he announced that he anticipated might be made to the sale, on the ground that the lumber was not measured at the time of transfer, called a witness, who testified that for many years he had been acquainted with the mode of selling lumber in Orange; and asked him whether the general custom in Orange was to sell lumber without measuring it. The plaintiff objected to this question ; but the judge permitted it to be put; and the witness answered that the custom was not to measure the lumber until it was moved from the place where it was when sold.

John Putnam, having been called as a witness by the defendant, and testified that Davis & Kilburn, about the time of the sale, represented themselves to him, who was one of their creditors, to be able to go on with their business, was asked on cross-examination, if he did not afterwards take security for his debt, and if he was not induced to take such security by what they said to him at this interview. He said he did take security afterwards, but was not induced to do so by what was then said. The plaintiff then asked him, what did induce him to take security. The defendant objected to the question, on the

ground that the answer might state hearsay declarations, or matter otherwise incompetent. The plaintiff contended that he had a right to an answer; that the answer might be, that the witness had previously often heard other creditors speak of Davis & Kilburn as insolvent, or that they were reputed to be insolvent in Orange. But the judge ruled that the question was not proper, and refused to allow it to be answered.

On the question of the meaning of the word "insolvent" in *St.* 1841, *c.* 124, § 3, the judge instructed the jury thus : " If, at the time the debt was paid to the defendant by the sale of the lumber, the debts of Davis & Kilburn, the insolvents, were so large and numerous that they had not the ability to pay them as they became due in the ordinary course of business, as men in similar business usually do, and their inability to pay them was so great as to compel them to stop business, they were insolvent, within the meaning of the statute.

" But if they were unable at such time to pay their debts in the ordinary course of business, as persons carrying on such business usually do, but their debts were not so great as to prevent their continuing in their business, and they had property which, fairly and legally applied, would be sufficient to pay their debts, they were not insolvent, within the meaning of the statute."

The verdict was for the defendant, and the plaintiff alleged exceptions.

In this court, the counsel filed the following agreement : " In this case, it is agreed, in addition to the facts stated in the exceptions, that a bill of sale, in exactly the same terms, except as to the amount conveyed, and of the same date with the bill of sale copied in the exceptions, was made to one Horace Blake, conveying to him another portion of the same lumber referred to in the bill of sale in the case at bar."

This case was argued at Boston in January 1854.

*C. P. Huntington & G. D. Wells,* for the plaintiff.

*N. Wood,* for the defendant.

THOMAS, J. The additional statement of facts, filed by counsel, cannot be considered in deciding upon the exceptions. That would be to revise the opinions of the learned judge upon a

different state of facts from that upon which his instructions to the jury were given.

1. We think the instructions as to the validity of the sale were correct. The contract was a sale, and not a mortgage. The right of property passed to the vendee by the bill of sale. As between the vendors and vendee, the sale was good before delivery. The assent of the vendors was not necessary to the taking of possession, and their objection was unavailing. *Parsons* v. *Dickinson*, 11 Pick. 352. *Macomber* v. *Parker*, 13 Pick. 175. *Riddle* v. *Varnum*, 20 Pick. 280. The jury must have found, under the instructions, that the defendant took possession of a part of the lumber before he was forbidden by the messenger. The taking possession of part was, in legal effect, the taking possession of the whole. The possession was in time. *Briggs* v. *Parkman*, 2 Met. 258. There was no evidence that the lumber sold the defendant was part of a lot, and not severed from it, or that any measurement was requisite before delivery No such question is open on the report.

2. Upon the facts reported, we do not see that the question of the custom at Orange, as to the time of measuring lumber sold, became material. If it were, the evidence seems to us to have been competent. It is not in conflict with the statutes, for it does not appear that this lumber was brought into town by water for sale. It is only to lumber so brought, that the Rev. Sts. *c.* 28 apply.

3. The question put by the plaintiff's counsel to the witness Putnam was competent, on the ground, among others, suggested at the trial. Two questions were at issue : 1st. Whether, when the transfer was made, Davis & Kilburn were insolvent; and 2d. Whether the defendant had reasonable cause to believe them to be insolvent. Upon the latter issue, it was clearly competent to show they were reputed to be insolvent.

4. The only remaining exception is to the instructions of the presiding judge as to what was the meaning of "insolvency," or "insolvent," under the *St.* of 1841, *c.* 124, § 3. It is extremely difficult, if not impracticable, to give a definition of insolvency that shall be found applicable to all classes of persons

who may avail themselves of the benefits of the insolvent laws. It is not, indeed, the business of practical jurisprudence to give definitions or lay down abstract propositions, but to give the rule applicable to the facts proved. Even if the abstract rule for all classes be the same, the kind and degree of evidence to estab· lish insolvency would be very different in the case of a banker or merchant, from that requisite in the case of a farmer, or one not engaged in active pursuits. The evidence which would sat- isfy the jury of the insolvency of the former, might wholly fail to convince them of that of the latter.

It became necessary, however, in the present case, and with reference to Davis & Kilburn, manufacturers and traders, (traders within the bankrupt laws,) to state to the jury what state of facts would constitute insolvency, within the meaning of the *St.* of 1841, *c.* 124. And if the learned judge had, in the first par- agraph of his instruction as reported, omitted the words, " and their inability to pay them was so great as to compel them to stop business," we think a definition would have been made in that paragraph, to which no just exception could have been taken.

But it is clear a trader may be insolvent, and may be known to be so to the creditor seeking a preference, though he is not compelled to stop business. Men often continue to carry on business upon the strength of the credit they have before ac- quired, long after they are actually and hopelessly insolvent; sometimes with the view of the better enabling themselves to make payments to preferred creditors, contracting new·debts to pay old ones; sometimes with a view of living upon the prop- erty in their hands. These are among the evils which it was the policy of the insolvent law to prevent.

What may be deemed the negative branch of the definition is also open to exception—that, though " unable to pay their debts in the ordinary course of business," yet, if " their debts were not so great as to prevent their continuing in business, and they had property which, fairly and legally applied, would be sufficient to pay their debts, they were not insolvent within the statute." We do not understand that an absolute inability to pay one's

debts at a future time, upon the winding up of his concerns, is necessary to constitute insolvency in a trader.

What is meant by the insolvency of a trader, as an abstract proposition, can be stated only in general terms. A trader may be said to be insolvent when he is not in a condition to pay his debts in the ordinary course, as persons carrying on trade usually do. *Bayly* v. *Schofield*, 1 M. & S. 338. *Shone* v. *Lucas*, 3 Dowl. & Ryl. 218. 2 Bell's Com. 167. *Herrick* v. *Borst*, 4 Hill, 650. *Thompson* v. *Thompson*, 4 Cush. 134. This is but a general, abstract rule, modified more or less by the habits and usages of the place where the debtor resides, and of the particular branch of business in which he is engaged. *Exceptions sustained.*