STATE OF DELAWARE EX REL. JOSIAH O. WOLCOTT, ATTORNEY GENERAL vs. JUSTUS R. KUHNS.

1. STATES—OFFICERS—APPOINTMENT—POWER OF GOVERNOR.

The power of appointment conferred on the Governor by Act April 6, 1911 (26 *Del. Laws, c.* 78), establishing the State Live Stock Sanitary Board, consisting of members of the State Board of Agriculture and a veterinarian, who shall be a competent and qualified person and a graduate of a veterinary college of good standing, to be appointed by the Governor, is restricted to the appointment of a graduate of a veterinary college in good standing, and the appointment of one without the statutory qualification is without authority of law.

2. QUO WARRANTO—APPOINTMENT TO OFFICE BY GOVERNOR—JUDICIAL REVIEW.

The court, in *quo warranto* to determine whether an appointee of the Governor, under Act April 6, 1911 (26 *Del. Laws, c.* 78), establishing the State Live Stock Sanitary Board, consisting of members of the State Board of Agriculture and a veterinarian appointed by the Governor, was a graduate of a veterinary college in good standing as required by the statute, will determine whether such appointee is a graduate of a veterinary college, but will not disturb the decision of the Governor that the college is one in good standing.

3. QUO WARRANTO—PLEADINGS—ISSUES.

Where, in *quo warranto* to show by what authority an appointee of the Governor under a state law creating an office holds office, the appointee relies on his appointment, a replication joining a matter for the court with one not for it must be considered as a whole and is bad.

4. QUO WARRANTO—NATURE OF PROCEEDINGS—PLEADINGS.

A *quo warranto* proceeding is a prosecution, and the information is less of a narr. than an accusation, and by the information respondent is accused of usurping an office, and is called on to show by what authority he holds it.

5. QUO WARRANTO—INFORMATION—PLEA.

Respondent in *quo warranto* must show by what authority he holds the office which he is alleged to usurp, and where the authority is controlled by qualifications, he must show such qualifications to disclose his authority, and a plea relying simply on the appointment, without showing the statutory qualifications to receive the appointment, is bad.

6. QUO WARRANTO—ISSUES—BURDEN OF PROOF.

Respondent in *quo warranto*, who relies on his appointment to the office which he is alleged to usurp, and on the statutory qualifications prescribed for the office, has the burden of showing his qualifications.

7. STATES—OFFICERS—APPOINTMENT—VALIDITY.

Where a statute which creates an office and empowers the Governor to fill it by appointment does not take effect until a future date, an appointment after the passage of the act, but before the future date, is invalid.

(*October* 10, 1913.)

Judges WOOLLEY and RICE sitting.

*Josiah O. Wolcott*, Attorney General, and *Hugh M. Morris* for the relator.

*Daniel O. Hastings* and *Richard S. Rodney* for the respondent.

Superior Court, New Castle County, September Term, 1913.

QUO WARRANTO (No. 73, March Term, 1913) by the State, on relation of Josiah O. Wolcott, Attorney General, against Justus R. Kuhns. On demurrer to replication. Judgment against defendant. The questions presented appear in the opinion.

See also, *ante*, 88 *Atl.* 455.

WOOLLEY, J., delivering the opinion of the court:

The issues of law presented by the pleadings in this case arise out of an act of the General Assembly of 1911 (*Chapter* 78, *Volume* 26, *Laws of Delaware*), entitled "An act to establish the State Live Stock Sanitary Board," which among other things provides:

"That a board is hereby established to be known as the State Live Stock Sanitary Board. The board shall consist of the members of the State Board of Agriculture as the said board is now constituted and as it may be constituted hereafter, and a veterinarian who shall be a competent and qualified person and a graduate of a veterinary college in good standing, to be appointed by the Governor for the term of three years.   *   *   *

"That this act shall take effect ten days after approval by the Governor.   *   *   *"

The Attorney General of the State of Delaware, in an action instituted on behalf of the State of Delaware against one Justus R.

Kuhns, obtained leave of this court to file an information in the nature of a writ of *quo warranto*, wherein he recited the provisions of the statute referred to, disclosed that the respondent was not a member of the State Board of Agriculture, and was not therefore a member *ex officio* of the State Live Stock Sanitary Board, and by the information charged that since the tenth day of April, A. D. 1911, Justus R. Kuhns, the respondent, has used, usurped and without legal right has exercised and still exercises the office, franchises, liberties and privileges of a member of the said the State Live Stock Sanitary Board, and prayed that inquiry be made of the said Justus R. Kuhns wherefore and by what warrant or authority he used and still uses, enjoys and employs the said office, franchises, liberties and privileges.

The respondent, by his plea, as warrant for the use and assumption by him of the office, franchises and privileges of a member of the said board, declared that before using and assuming the same, to wit, on the tenth day of April, 1911, he was appointed and commissioned by the Governor of the State of Delaware a member thereof.

The state, by its replication, replied in substance that the respondent, at the time he was appointed and commissioned, did not possess the qualifications for the office required by the statute, in that he was not then "a graduate of a veterinary college in good standing."

To the replication the respondent demurred generally.

For want of further particularity in the pleadings, it must be assumed, as a necessary implication, that the particular membership of the board to which the respondent was appointed and commissioned by the Governor was that of veterinarian, as that is the only appointment to the board which the Governor is authorized by the law to make, the other members being members by virtue of their incumbency of other offices.

[1] For ground of demurrer the respondent contends, that the Governor of the State of Delaware, constituting the executive department of the government, in which alone the power of making the appointment in question was vested by the legislative department, may alone determine the qualifications of his

appointee, and his determination as evidenced by the fact of his appointment, cannot be reviewed or reversed by the judicial department. Applying this contention to the case at issue, the respondent further claims that by his appointment, the Governor has determined that, as his appointee, he has the qualification of being "a graduate of a veterinary college in good standing."

[2] The expression "a graduate of a veterinary college in good standing," as used in the statute and recited in the replication, suggests two qualifications: *First*, that the veterinarian be a graduate of a veterinary college; and, *second*, that the college of which he is a graduate be a college in good standing. We are satisfied that the authority of the Governor to make the appointment is restricted to a man with the qualifications prescribed by the statute. An appointment of a man without the qualification of being a graduate of a veterinary college would be an appointment without authority of law. Whether the appointee is a graduate of a veterinary college is a matter into which the courts may make inquiry in order to determine whether the Governor has done an act within or without the scope of the authority conferred by law. Having ascertained the fact of the appointee being a graduate of such a college, the courts will leave the consideration of the standing of the college as a matter within the determination of the Governor and not to be reviewed by the courts.

[3] As the state has joined both of these qualifications, in the one expression in its replication, one of which may be a matter for the court and the other of which is not, and as the replication must be considered as a whole, we find the replication bad.

It is contended, however, even if the replication is bad, that the court must look back of it and lay its hands upon the first faulty pleading, and that the plea is bad in that it simply states the fact and time of the appointment and commission of the respondent and does not show his legal and requisite qualifications for the office he claims rightfully to hold.

[4-6] The proceeding by information in the nature of a writ of *quo warranto*, being in theory, as at one time it was in fact, a prosecution, the information as a pleading is less of a narr. than a complaint or an accusation. By the information the respondent

is accused of usurping an office and is called upon to show by what authority he holds it. By his plea he must show his authority. If his authority is controlled by his qualifications, he must show his qualifications in order thereby to disclose his authority. The plea, when of justification, must show all the facts necessary to establish his lawful right in the matter. It is his answer to the inquiry, it is his reply to the accusation of usurption and it is the first pleading that indicates the facts upon which the controversy has arisen. It is an affirmative showing, the burden of maintaining which is upon the defendant. *Brooks v. State, ante,* and 79 *Atl.* 790, 798.

As graduation from a veterinary college is a prerequisite to the Governor's authority to appoint the respondent to the office to which he makes claim, so it is a prerequisite to his right to hold the office and should be stated in the plea. We are of opinion that a plea that relies simply upon the appointment to office and the commission thereunder, without showing the appointee's qualifications to receive such an appointment and accept such a commission, is bad.

[7] But it is claimed by the state that the plea is bad for another reason, namely, that when the Governor appointed the respondent to the office in question, there was no such office in legal existence and no existing authority to warrant the appointment.

It appears that the act establishing the State Live Stock Sanitary Board, was approved by the Governor on April 6, 1911, the act, by its terms, went into effect April 16, 1911, and the appointment was made during the interim on April 10, 1911.

Against the proposition that the law speaks from the date it goes into effect and not from the date of its approval, when the two dates do not coincide, there has been cited by the respondent but one authority. This authority is *People v. Inglis*, 161 *Ill.* 262, 43 *N. E.* 1103, and in the relation of the time of appointment to the date of the enactment of the law and the time at which it went into effect, is much like the case before us, and while the judge deciding the case made a distinction between the existence of a law and the time at which it went into effect, he upheld an

appointment made in the interim, not upon the theory of the distinction or as made by authority of the law not then in effect, but upon a provision of the Constitution of this state which made the Governor the appointing power for all offices created by statute. That case is no aid to us in this case, for the appointment here was made under the authority of the same statute that created the office and the power of appointment is coexistent with the creation of the office. The question then is, when was the office created and when was the power of appointment conferred upon the Governor, upon the date of the approval of the act or upon the date, that by its own terms, it took effect?

The leading authority upon this subject is an opinion, unanimously concurred in by the judges of the Supreme Court of Massachusetts, of which Mr. Justice Shaw was Chief Justice, rendered in response to certain questions proposed to them by the Governor of that state, for the purpose of guiding him in making certain judicial appointments to a new court established by a statute to take effect on a certain date in the future. *Supplement to* 69 *Mass.* 600, 606, 607, 608. The opinion of the judges upon this subject is as follows:

" 'VI. Can the judges of the Superior Court for Suffolk County be appointed before the first Tuesday in October next?'

"6. In answer to the sixth question, we are of opinion that the judges of the Superior Court for the County of Suffolk cannot be appointed before the first Tuesday, which will be the second day of October next.

"The act to establish the Superior Court of the County of Suffolk, being the statute of 1855, *c.* 449, was passed on twenty-first May last, and the last section provides that the act shall take effect on and after the first Tuesday of October next. It is a general rule that all statutes take effect and go into operation at and from the time of their passage, unless a different time be prescribed by the statute itself, or by some general law in force at the time of its enactment, fixing the time at which it shall go into operation. By *Rev. Sts. c.* 2, § 5, every statute, which does not prescribe the time, shall take effect on the thirtieth day next after it is passed. But when any statute does itself prescribe the

time when it shall take effect and go into operation, such provision, when it is general, and without exception of any part of the act, applies to and qualifies every part and portion of the statute. Every provision and clause of the act, whether it be for making any new law, or for repealing, qualifying or amending any old one, are absolutely suspended until the arrival of the time limited for its going into operation, to the same effect and purpose, as if it had been passed on that day. If such an act confers powers on the Governor and council to appoint officers, or on the Legislature or people to elect them, such powers do not become vested in such magistrates or people, until the day limited for the act to go into operation. If it repeals any pre-existing law, such law remains in force until the time for the repealing act to take effect. And the same is true of every other provision, repealing, changing or modifying an existing law; it remains unrepealed and unaffected, until the time fixed for the new law to go into operation. And we are of opinion that, whichever of these phrases is used, where a future day is fixed, applicable to the whole act, viz., 'that it shall go into operation on and after such a day,' or 'that it shall take effect,' or 'that it shall be in force,' they mean the same thing, and suspend the entire operation of the act, till the day named. Both terms, 'shall go into operation,' and 'shall take effect,' are used in the revised statutes, and are apparently used indiscriminately.

"Nor does it, in our opinion, make any difference that no negative words are used, as, for instance, on such a day, 'and not before.' This is well illustrated in both particulars by the case of *Commonwealth v. Fowler*, 10 *Mass.* 290. By *St.* 1811, *c.* 137, passed February 25, 1812, the County of Hampden was established. By the last section, it was enacted that 'this act shall take effect and be in force from and after the first day in August next.' The provision was general, and there were no negative words. A judge of probate, sheriff and other officers having been appointed before the day fixed for the statute to take effect, it was held that such appointments were made without the authority of law and were void.

"These are some of the principal reasons upon which we have

come to the opinion that this act confers no authority upon the Governor and council to appoint or nominate judges for the Superior Court for the County of Suffolk, before the first Tuesday of October next, and that such appointments would be void."

We find no deviation from the principles stated in this opinion in any case submitted to us or in any case found by us in the research which we have made in addition to that made by counsel in this case. On the contrary we find this principle uniformly followed. *Commonwealth v. Fowler*, 10 *Mass.* 290; *Rhodes v. Hampton*, 101 *N. C.* 629, 8 *S. E.* 219; *State v. Meares*, 116 *N. C.* 582, 21 *S. E.* 973; *State v. Peelle*, 124 *Ind.* 515, 24 *N. E.* 440, 8 *L. R. A.* 228; *Iriquois County v. Keady*, 34 *Ill.* 293; *People v. Johnston*, 6 *Cal.* 674; *Miller v. Kister*, 68 *Cal.* 142, 8 *Pac.* 813; *Santa Cruz, etc., v. Kron*, 74 *Cal.* 222, 15 *Pac.* 772; *Rice v. Ruddiman*, 10 *Mich.* 125, 135; *Price v. Hopkins*, 13 *Mich.* 318.

There is a distinction, however, recognized by the authorities, between an appointment to an office not in existence because of the postponed operation of the statute, and an appointment to an office that is in existence, but in which there is at the time no vacancy. As the latter situation is not before us we have given no consideration to the law relating to it.

Upon both contentions made against the plea, judgment is directed to be entered against the defendant.

Upon the election of defendant, judgment of *respondeat ouster*.