STATE ex rel. GILES, Attorney General, v. HYDE.

No. 6613. Decided October 28, 1943. (142 P. 2d 665.)

*Zar E. Hayes, A. U. Miner,* and *Herbert F. Smart,* Deputy Attys. Gen., for plaintiff.

*Beverly S. Clendenin,* of Salt Lake City, for defendant.

MOFFAT, Justice.

This is an original action filed in this court in quo warranto on the relation of the Attorney General of Utah challenging the authority of the defendant to hold the office of Commissioner of the Department of Finance of the State.

The complaint alleges, in substance, that the First Special Session of the 1941 Utah State Legislature enacted a law on March 26, 1941, designated as Senate Bill No. 20, creating and establishing a Department of Finance, providing that the administration of the Department should be under the control of a Commission of Finance, and that:

"* * * The commission of finance shall be composed of three members who shall be appointed by the governor *by and with the consent of the senate,* whose terms of office shall be six years except as further provided in this section. Of the members first appointed, the term of one shall expire March 1, 1943, the term of one shall expire March 1, 1945, and the term of one shall expire March 1, 1947, and their successors shall be appointed for a term of six years. * * *" (Italics added.) Sec. 82C-2-2, U. C. A. 1943.

And that:

"Vacancies in the office of commissioner of finance occurring by reason of death, resignation or other cause, or by rejection by the senate, shall be filled by the appointment of another person by the governor which appointment shall be submitted by him to the senate for confirmation or rejection in the first session thereof after the

appointment, or, if made while the senate is in session, at that session." Sec. 82C-2-3, U. C. A. 1943.

The act provided that it should "take effect on July 1, 1941, at the hour of 12:01 o'clock a. m. or upon the proclamation of the governor prior to that date." The First Special Session of the 1941 Legislature adjourned sine die on March 29, 1941; on April, 1941, the Governor approved the act; and on June 16, 1941, by proclamation, the Governor provided that the act should be in full force and effect from and after the latter date, June 16th.

Under date of March 28, 1941, prior to the adjournment of the First Special Session and prior to the approval of the above act by the Governor, the latter sent to the Senate of that session the following letter:

"To the Senate:

"It seems advisable that one of Commissioners of the newly created Department of Finance be appointed and confirmed at this time in order to permit him to cooperate with the committee to be appointed by the Governor to set up the various departments of the State.

"To that end, I have appointed Gordon Taylor Hyde of Salt Lake City as Commissioner of Finance to take office on the date that Senate Bill No. 20, which creates the Department of Finance, becomes effective and to serve until March 1, 1947.

"Yours truly,
"(Sgd)    Herbert B. Maw,
"Governor."

On the following day, March 29, 1941, the Senate of said Special Session purported to confirm the appointment of defendant in accordance with the terms of the Governor's letter, and on that day the Special Session of the 1941 Legislature adjourned sine die.

In pursuance of the above action, the defendant took oath of office on June 16, 1941, and entered upon the duties of the office of Commissioner of Finance and ever since that date has continued to exercise the powers, functions

and prerogatives of the office. No action other than that above set forth has since been taken by the Governor at any time or by the Senate at any regular or special session of the Legislature affecting this purported appointment and confirmation.

We quote from the pleadings. Plaintiff alleges:

"8. That any appointment or authority under which the said Gordon Taylor Hyde might have acted as such Commissioner of Finance after the establishment of the Finance Commission by said Senate Bill No. 20, as passed by the First Special Session of the 24th Legislature, could not have been other than an interim appointment authorizing the said Defendant to act in the capacity of such Finance Commissioner from the 16th day of June, 1941, the date when the Act took effect, until the next meeting of the Senate of the State of Utah; that the purported confirmation, as made by the Senate of the State of Utah in its First Special Session on March 29, 1941, was null and void and of no effect and the said Defendant has not been properly confirmed by any session of the Senate of the State of Utah; that the said Defendant still continues to wrongfully assume and exercise the powers, duties, functions and prerogatives of said office, since the expiration of the term during which he might have held an interim appointment."

The defendant filed a demurrer, the sole ground relied upon being that the complaint named no person claiming the office as against the defendant. In his answer, defendant

"(2) * * * denies that the appointment of defendant as Commissioner of Finance was merely an interim appointment, and alleges that, as shown by the letter of Governor Herbert B. Maw, dated March 28, 1941, and set forth in plaintiff's complaint, said appointment or nomination of Gordon Taylor Hyde as Commissioner of Finance was intended to and did remain and become a continuing appointment or nomination operating at the time the law in question went ito effect, that is June 16, 1941, and that said choice and appointment made by the Governor to become effective as aforesaid was at no time revoked, recalled or superseded but at all times remaining a continuing act and appointment of the Governor. Defendant further denies that the confirmation of such appointment made by the Senate on March 29, 1941, was in any sense null and void or without force and effect, and alleges that the act of the Senate taken pursuant to the Governor's appointment and letter of notification was its continuing advice and consent and was at no time recalled, revoked or superseded, and

became effective and a valid confirmation of said appointment as of June 16, 1941, and that the Senate in its Second Special Session, convening May 19, 1941, and adjourning June 12, 1941, ratified and confirmed its said action in approving said appointment by confirming the appointment of two additional Commissioners to said State Commission of Finance without requesting the submission of the name of a third member thereof, and by delegating duties to said Commission of Finance so appointed, by appropriating funds for the maintenance and functions thereof, and by taking no act or steps to rescind or supersede its approval of and consent to said appointment as theretofore made and given; and that the appointment of said defendant thereby became, on June 16, 1941, fully effective and rightful, and defendant has at all times since said date rightly and properly continued to hold said office and exercise the functions and perform the duties thereof."

The first question to be disposed of is that raised by the demurrer interposed by the defendant on the ground that the complaint fails to state a cause of action by reason of the fact that it "fails to allege the name of the person who claims to be entitled to the office in question and contains no statement as to his right thereto, all as required by Section 104-66-6, Utah Code Annotated, 1943."

There was no person, other than defendant, claiming the right to the office in question. It is true that the section referred to provides that there shall be stated in a complaint in quo warranto "the name of the person who claims to be entitled" to the office, authority to hold which is brought in question. That manifestly applies to a case where there is such a person claiming the right to an office. The provision does not preclude the bringing of an action on the relation of the Attorney General in the interest of the public to test the authority of one holding a public office where there is no other claimant to the office, such as in the instant case.

Sec. 104-66-1, U. C. A. 1943, provides that:

"A civil action may be brought in the name of the state: (1) Against a person who usurps, intrudes into, or unlawfully holds or exercises, a public office, civil or military * * *."

And Sec. 104-66-4 provides that:

"The attorney-general may, upon his own relation, bring any such action, * * *."

That the complaint in this action is not vulnerable to a demurrer on the ground contended for by defendant and cannot be seriously questioned. The demurrer is overruled. *State ex rel. Giles, Attorney General,* v. *Burke,* 101 Utah 48, 117 P. 2d 454; *State ex rel. Nagle, Attorney General,* v. *Kelsey,* 102 Mont. 8, 55 P. 2d 685; *People ex rel. Fleming* v. *Shorb,* 100 Cal. 537, 35 P. 163, 38 Am. St. Rep. 310; *State ex rel. Sullivan, Attorney General,* v. *Moore et al.,* 49 Ariz. 51, 64 P. 2d 809.

The principal which must decide this case was involved practically on all fours in the case of *State ex rel. Cook* v. *Meares,* 116 N. C. 582, 21 S. E. 973, 975. There the General Assembly of North Carolina passed an act on March 8, 1895, creating a circuit criminal court, but the act was not signed and ratified by the president of the senate and speaker of the house until March 12, 1895. The act provided that a judge for this court should be elected by the legislature, and in pursuance thereof the legislature elected the plaintiff to the office on March 9, 1895, and the vote on the election was reported and confirmed on March 11th, the day before the act was signed and ratified. On March 13th the Governor appointed the defendant to the office and the latter assumed the duties of such judge and continued so to act. The Supreme Court of North Carolina sustained the defendant in the judgship and held that the pretended election of the plaintiff to the office was a nullity, "that a party cannot be elected to an office that does not exist at the time of the election" and that "It is better that the intention of the legislature should be defeated for a time than that we should violate the law."

And so we hold in the instant case that the Governor's purported appointment of defendant to the office of Commissioner of Finance and the purported confirmation by

the Senate in the First Special Session of 1941 were a nullity and of no effect whatever; that the office of Commissioner of Finance and the Department of Finance itself did not come into existence until the act was approved by the Governor on April 1, 1941. The Senate is a deliberative body and it is idle to contend that there was any ratification by the subsequent special session of that body when it acted upon the appointment of the other two members of the Commission, in the absence of any showing that the confirmation of defendant's appointment was in any matter submitted to that session for its action. A nomination by the Governor for an appointment may be considered a continuing nomination or recommendation until it is acted upon or withdrawn; but a nomination for appointment once acted upon ceases to be before the legislative body. If acted upon when there is no office to be filled by the gubernatorial nomination a confirmation, tho attempting to complete the appointment, leaves nothing done or to be done. We so hold on the authority and reasoning of the Meares case, supra, and the following cases: *State* v. *Shuford*, 128 N. C. 588, 38 S. E. 808; *State ex rel. Wolcott, Attorney General,* v. *Kuhns*, 4 Boyce, Del., 264, 88 A. 455; Id., 4 Boyce, Del., 416, 89 A. 1; *State ex rel. Langer, Attorney General*, v. *Crawford et al.*, 36 N. D. 385, 162 N. W. 710; and *State ex rel. Langer, Attorney General,* v. *Scow et al.*, 38 N. D. 246, 164 N. W. 939.

Let judgment be entered ousting defendant from the position of Commissioner of the State Department of Finance.

LARSON and WADE, JJ., concur.

WOLFE, Chief Justice (concurring in result).

I concur in the result. My concurrence is based on the ground that the consent of the Senate was obtained before the bill became a law. If the bill had become a law and the consent of the Senate obtained between the time the bill became a law and the 16th day of June when it became

operative I think the appointment would have become complete. The consent does not need to be had after the law becomes operative for reasons hereunder stated.

It appears to me that some note should be taken of counsel's contention that the nomination of Mr. Hyde was a continuing one and that the confirmation by the Senate on the 29th day of March, 1941, was also a continuing consent so as to carry over into the Second Special Session of the Twenty-Fourth Legislature. Counsel contends that the Twenty-Fourth Session was a unit, the regular and two special sessions being all parts of the same legislature. The senatorial members were the same. Of course, the reasoning of the main opinion that "the Governor's purported appointment of defendant to the office of Commissioner of Finance and the purported confirmation by the Senate in the First Special Session of 1941 *were a nullity and of no effect whatever*" and the later statement that "a nomination for appointment *once acted upon* ceases to be before the legislative body" (italics mine in both quotations) are quite inconsistent. If the purported confirmation was a nullity and of no effect whatever it could not have the effect of exhausting the efficacy of the nomination.

I could reconcile myself to the concept that the nomination of the governor dated March 28, 1941, was a "when and if" nomination and if it had been acted on after April 1st (date when the bill became law) would have been a valid and completed appointment. Certainly the Governor and Senate acted in good faith and for a good purpose. Mr. Hyde assumed the office in blissful ignorance that there was any flaw in his appointment. I see no reason, therefore, for being technical. But I do not think the requirement that the bill be a law (even if not operative) before confirmation, rests solely on logic. There is a substantial reason for the rule besides the structure reared in logic that there was no office in existence to which the appointive power could apply. Before a bill becomes law it is in the stage of evolution and change. A nomination and con-

firmation of a certain person before the bill became a law might be made in view of the provisions of the bill as they existed at the time of confirmation. There might be many changes in the duties of the office, the qualifications of an incumbent and the salary fixed which might make it advisable that the Senate appraise the appointee in the light of those changes. The state is entitled to a consideration of the appointee in the light of the bill as it finally emerges as a law. True in this case the bill was at the time of confirmation in the hands of the Governor awaiting his signature. Unless he sent it back with a veto and reasons for his veto it would have become a law. But the rule that the Senate should appraise the nomination in the light of the provisions of the law as they are when the appointment is to be completed is too important to allow of a variation to suit a special situation.

It is contended by counsel for Mr. Hyde that the consent of the Senate may be shown by implication and that there was action by it after April 1, 1941, in the Second Special Session from which consent could be inferred. If so such confirmation by implication rather than by direct expression would meet the substantive purposes of the rule above set out. My difficulty lies in putting my finger on any acts of the Second Special Session from which confirmation could be inferred. It is true that the other two commissioners were confirmed and Hyde not considered and it is most probably true that the Senate did not consider Hyde because it was under the impression that he was already confirmed. But ratification requires acts which show an affirmative intent to adopt the actions and consequences of another and treat them as applicable to the one whom it is claimed ratified those acts, or at least requires such deliberate intention to avoid action in the face of a duty to repudiate the actions or consequences of another as would work an estoppel to deny lack of affirmance. I find no such deliberate intention nor duty. A silence based on the assumption that one has already performed what in fact

he did not perform is not to be construed as a ratification or confirmation. In the case of *Larsen* v. *City of St. Paul*, 83 Minn. 473, 86 N. W. 459, cited by defendant, the council approved the payrolls containing the name of the appointee. Such was an implied confirmation. But where the legislature appropriated money for the salaries of three commissioners which it might do regardless of who they were or even if none were yet appointed, is not the same as appropriating money specifically for a named commissioner or approving a payroll on which his name appears.

While I deplore the predicament in which Mr. Hyde finds himself I must place regard for the correct pursuit of constitutional requirements as a paramount consideration.

McDONOUGH, Justice.

I concur. I also concur in what is said in the opinion of the CHIEF JUSTICE relative to the reason for the enunciated rule and in regard to defendant's contention that there was an implied ratification of his nomination or a "continuing consent" by the Senate to a "continuing nomination" by the Governor. The theory of implied ratification and that of continuing consent—where the Senate after purported approval failed to repudiate its action by formal vote—would apply, it seems, in a case where the nomination and attempted consent and approval preceded passage by the Legislature of a bill creating an office as well to one in which the bill had been passed by the Legislature but had not at the time of approval by the Senate of a nomination by the Governor been signed by the latter. If so, the adoption of either theory would tend to defeat the suggested reason for the rule. True, the Senate might in either instance negative implied consent and interrupt continuing consent by affirmative action. But it is better to apply the rule so as to require the Senate to give consent after the act becomes a law, than to apply it so as to require subsequent affirmative action on its part to prevent the possible consequences of a failure to comply with the rule.

The fact that the Governor in the instant case had, at the time of submission of the nomination, the sole power to decide whether the bill was to become a law by virtue of his approval or be vetoed, is not, as the CHIEF JUSTICE suggests, a reason for modification of the rule. If the Governor might withhold approval of a bill until his nominee is confirmed by the Senate there would be placed in the hands of the Chief Executive a power of coercian in the approval of such appointments not contemplated by the Constitution of this State. This last observation is made, of course, with complete confidence that it was not so used here and with concurrence in the statement in the opinion of the CHIEF JUSTICE that the Governor and the Senate acted in good faith and for a good purpose.