Argued and submitted May 28, reversed and
remanded December 15, 1982, reconsideration denied February 17,
petition for review denied March 29, 1983 (294 Or 682)

## STATE ex rel OREGON CONSUMER LEAGUE et al,
### *Appellants,*
### *v.*
## ZIELINSKI,
### *Respondent.*

### (No. 123,552, CA A22602)

654 P2d 1161

Douglas D. Hagen, Portland, argued the cause for appellants. With him on the briefs was Cathryn C. Hagen, Portland.

Virginia L. Linder, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief was

Dave Frohnmayer, Attorney General, Stanton F. Long, Deputy Attorney General, and William F. Gary, Solicitor General, Salem.

Before Thornton, Presiding Judge, and Van Hoomissen and Rossman, Judges.

THORNTON, P. J.

Reversed and remanded.

Rossman, J., dissenting.

## THORNTON, J.

Plaintiffs brought this action in the nature of *quo warranto* seeking a determination whether defendant is holding her public office unlawfully and, if so, her exclusion from that office. The trial court entered an order granting defendant's pretrial motion to dismiss and plaintiffs appealed. We reverse.

Defendant is a Marion County resident. She is a farmer, the wife of a farmer, past president of the Oregon Women for Agriculture and secretary to the Board of Directors of the Agri-Business Council of Oregon. In August, 1979, she was appointed by the Governor to be one of the two members of the State Board of Agriculture (Board) representing consumer interests and presently serves in that capacity. The nine-member Board establishes policy for the administration of the Department of Agriculture. ORS 561.140(2). The primary qualifications for membership are set out in ORS 561.130(2):

> "The members shall be citizens of Oregon seven of whom are actively engaged in the production of agricultural commodities and two of whom are representative of consumer interests of the state."

In November, 1980, plaintiffs filed this action, alleging that, because of defendant's agricultural ties, she is not "representative of consumer interest[s]" and, therefore, is holding public office unlawfully. Plaintiffs prayed for a judgment incorporating a declaration to that effect and requiring defendant to vacate her office. Defendant moved to dismiss the complaint on the following grounds: (1) lack of subject matter jurisdiction; (2) lack of a justiciable controversy; and (3) plaintiffs' failure to state facts sufficient to constitute a claim. In its letter opinion, the trial court stated no specific grounds for the decision to allow the motion. Simply stated, the issue before us is whether, in light of the facts alleged in the complaint, plaintiffs may obtain relief through this proceeding.

The common law writ of *quo warranto* has been abolished in Oregon. ORS 34.810. In its place, the legislature has created an action at law, which generally codifies the common law of that writ. *State ex rel Boe v. Straub*, 282 Or 387, 390 n 1, 578 P2d 1247 (1978). Historically, *quo*

*warranto* is an action at law that requires the occupant of a public office to show by what right or authority he or she holds that office; it is an action to try title to public office. *State ex rel v. Stevens,* 29 Or 464, 472, 44 P 898 (1896). ORS 30.510 provides, in pertinent part:

"An action at law may be maintained * * * upon the relation of a private party against the person offending, in the following cases:

"(1) When any person usurps, intrudes into, or *unlawfully holds or exercises any public office,* civil or military, or any franchise within this state, or any office in a corporation either public or private, created or formed by or under the authority of this state; * * *"[1] (Emphasis added.)

Plaintiffs contend that, because the legislature has chosen to prescribe minimum qualifications for appointees to the Board, a court may determine whether defendant meets those qualification and, thus, whether she "unlawfully holds * * * public office." ORS 561.130(2) requires that a person appointed to defendant's position on the Board be (1) a "citizen of Oregon," and (2) "representative of consumer interests of the state." Plaintiffs argue that the latter of these "minimum eligibility criteria" is "capable of definite application" in this case, where the governor, by appointing a person who is patently representative of the producers of agricultural commodities to a consumer position on the Board, went beyond the statutorily prescribed boundaries of the pool of qualified appointees.

Defendant answers that the statute does not define "representative of consumer interests of the state" or provide standards to apply in determining whether an appointee meets the qualification. Therefore, according to defendant, the statute provides only a "general statement of purpose designed to guide the governor in the exercise of his judgment as to whom he should appoint to fill the nine positions on the Board." Defendant concludes that, although "[u]nquestionably * * * the governor is to strive to appoint someone capable and willing to represent the

---

[1] ORS 30.560 provides that any person found guilty of usurping, intruding into, or unlawfully holding a public office shall be excluded from that office and may be fined up to $2000.

consumer interests," except for the requirement that an appointee be a resident of Oregon, "[t]he legislature unequivocally has delegated to the governor the exclusive authority to otherwise decide the fitness of potential appointees."

*State ex rel Boe v. Straub, supra,* and *State ex rel Madden v. Crawford,* 207 Or 76, 295 P2d 174 (1956), the two Oregon decisions cited by the parties, provide little guidance in resolving the question presented here. Although both cases involved the question whether a public official held office "unlawfully," and both decisions affirmed that a proceeding under ORS 30.510 provides the exclusive remedy for such a purpose, neither involved a direct challenge to a public official's *qualifications* or *credentials* to hold appointive office.[2]

We conclude that the standards set out in the statute (ORS 561.130(2)) are sufficiently definite to permit judicial inquiry into the validity of defendant's appointment as one of the two consumer representatives on the State Board of Agriculture. Seven members of the Board must be "actively engaged in the production of agricultural commodities"; two members must be "representative of consumer interests of the state."

Not only does ORS 561.130(2) inferentially declare that not more than seven members shall be actively engaged in farming, it provides expressly that the other two members shall be representative of consumer interests. That discloses a clear legislative intent that the agriculture members be engaged in farming and that the two consumer representatives not be engaged in farming.[3]

---

[2] In *State ex rel Madden v. Crawford,* 207 Or 76, 295 P2d 174 (1956), the court considered the constitutionality of a statute authorizing the Supreme Court to appoint members of the circuit court bench to temporarily serve as Supreme Court justices. In *State ex rel Boe v. Straub,* 282 Or 387, 578 P2d 1247 (1978), the court held that, where the governor had failed to have an appointment confirmed by the senate as required by law, ORS 30.510 and not mandamus provided the appropriate means to challenge the appointment.

[3] The rule or maxim *"expressio unius est exclusio alterius,"* which arguably applies here, has been followed in a number of Oregon cases. *See, e.g., Smith v. Clackamas County,* 252 Or 230, 448 P2d 512 (1968), *partially overruled on other grounds, Whipple v. Howser,* 291 Or 475, 487, 632 P2d 782 (1981); *Kruckman v. Smith et al.,* 126 Or 395, 270 P 474 (1928); *Gantenbein v. PERB,* 33 Or App 309,

The dissenting opinion relies on *State ex rel McIntyre v. McEachern,* 231 Ala 609, 166 So 36 (1936), where the court held that the statutory terms "experienced road builder" and a "competent engineer" were too indefinite to permit judicial inquiry into the validity of the appointment. We have no quarrel with the rule involved in *McIntyre* and similar cases. But *McIntyre* is simply not in point here. The Alabama provision is completely distinguishable from the Oregon statute. The Alabama statute did not expressly or inferentially define the terms "experienced road builder" and "competent engineer," nor did it fix the number and specifically define the qualifications of persons eligible to a board or commission, as does ORS 561.130(2).

Reversed and remanded.

**VAN HOOMISSEN, J.,** specially concurring.

I concur in the result.

In enacting ORS 561.130 the legislature intended to identify two distinct interest groups whose representatives would establish policy for the Department of Agriculture, *i.e.,* agricultural producers and consumer representatives. Defendant so patently falls within the former group that for us to hold she may serve in a position reserved for the latter is to ascribe to the legislature an intention to make meaningless any distinction between the groups. The legislature could not have intended such a result.

**ROSSMAN, J.,** dissenting.

On the basis of a mere inference, the majority is willing to hold that ORS 561.130(2) provides standards that "are sufficiently definite" to allow us to determine whether defendant unlawfully holds public office. The statute simply does not provide such standards. Furthermore, the

---

576 P2d 1257, *rev den* 282 Or 537 (1978). The maxim is applied only as an aid in arriving at the legislature's intent. *Daly v. Horsefly Irrigation District,* 143 Or 441, 21 P2d 787 (1933). Strictly speaking, however, the maxim would not appear to apply here because ORS 561.130(2) expressly provides that although seven members must be actively engaged in farming, the remaining two members shall be representatives of consumer interests. *See Whipple v. Howser, supra,* 291 Or at 487.

majority's holding constitutes an unauthorized intrusion into the domain of the executive branch of our state government, and the reasoning on which the holding rests unfortunately opens the door to similar intrusions in the future. For these reasons, I respectfully, but vigorously, dissent.

At the outset, it must be remembered, as the majority has apparently forgotten, that we are *not* called upon here to determine the *merits* of this appointment. Simply stated, the issue before us is whether, in light of the facts alleged in the complaint, plaintiffs may obtain relief through an action in the nature of *quo warranto.* Although, as noted by the majority, the Oregon *quo warranto* cases cited by the parties do not involve direct challenges to a public official's qualifications to hold office, *State ex rel McIntyre v. McEachern,* 231 Ala 609, 166 So 36 (1936), also briefed by the parties, does address the question. The petitioner in that case, proceeding under a statute similar to ORS 30.510(1), brought a *quo warranto* action to remove a public official from his position as road and bridge foreman for the county. The trial court determined that the official could not be ousted through such a proceeding, and the Alabama Supreme Court affirmed, finding that there were no standards in the statutes by which the official's qualifications for office could be measured. The court's discussion of the matter is instructive:

> "Both acts of 1931 and of June, 1935, provide that such office shall be held by an experienced road builder who shall be a competent engineer. We think that there should have been no inquiry into the fact on this trial of whether appellee was thus qualified.
>
> "* * * That proceeding *[quo warranto]* is only applicable, so far as we are here concerned, to oust one who 'usurps, intrudes into, or unlawfully holds or exercises any public office,' or does any act which 'forfeits his office,' * * * and as to which the Constitution does not otherwise provide a procedure * * *. It will lie to test the qualifications of one to hold an office when they are sufficient to make it unlawful for him with them to hold the office. Those qualifications must go to his eligibility to hold the office or sufficient to cause its forfeiture* * *."
>
> "* * * It was the duty of the county commissioners to determine whether the road foreman was an experienced

road builder and competent engineer before electing and inducting him into office. Such qualifications have no definite and fixed standard for measurement. They are relative in essence. Persons often differ as to whether one is so qualified. The county commissioners pass on that when they elect one to that office." 166 So at 39-40.

Just as in *McEachern,* where there were no definite, statutorily-defined standards for determining whether the road and bridge foreman was an "experienced road builder" and a "competent engineer," here there are no specific, objective criteria prescribed in the pertinent statute on which to base a determination whether defendant "[is] representative of consumer interests of the state." The requirement that defendant be "representative" of those "interests," like the prescribed qualifications in *McEachern,* "[has] no definite and fixed standard of measurement[,] * * * [is] relative in essence * * * [and] pass[ed] on [by the governor when he appoints] one to that office." The majority approves of the rule stated in *McEachern* and yet claims to be able to distinguish the statute involved in that case on the following grounds:

"The Alabama statute did not expressly or inferentially define the terms 'experienced road builder' and 'competent engineer,' nor did it fix the number and specifically define the qualifications of persons eligible to a board or commission, *as does ORS 561.130(2)."* (Emphasis supplied.)

The majority, however, does not identify those portions of ORS 561.130 that "specifically define" the phrase "representative of consumer interests" and cannot, because such a definition simply does not exist.

Plaintiffs argue that "[c]ommon sense would indicate that the legislature intended a meaningful distinction between the two categories of Board members." They interpret ORS 561.130 to mean, in effect, that *anyone* engaged in farm production is *automatically* disqualified from serving on the Board as a "representative of consumer interests." The majority reaches that same conclusion by determining that the statute "inferentially declare[s]" that not more than seven members of the Board can be farmers. Thus, defendant, being a farmer, is disqualified without regard to any attributes, experience, credentials or

associations that would otherwise qualify her to be "representative of consumer interests." Although, arguably, such an interpretation would provide the definite, nonrelative criteria required for plaintiffs to maintain this action under ORS 30.510, the language of the statute is not so definite and does not require exclusion on the grounds urged by the majority. The fact that construction is required to provide content to the statutory standards indicates the relative nature of the language *actually* used. In addition, the majority's construction is certainly not the only one the statute allows. For the purposes of *quo warranto,* the question is *not* what may be inferred but whether the statute so clearly excludes farmers from appointment to one of the two consumer positions on the Board that defendant's appointment is subject to judicial review. In my opinion, it does not do so; *i.e.,* the statute does not expressly provide for such exclusion, nor does being a farmer necessarily prevent a person from being "representative of consumer interests."

Where a statute *in fact* provides qualifications for holding a particular office in the nature of specific "minimum eligibility criteria" (*e.g.,* education, residence, party affiliation, age, etc.), or specific exclusions, *see, e.g.,* ORS 561.130(6) and 696.405(1),[1] lawfulness of an appointee's holding that office may be decided by determining whether the appointee possesses those qualifications. In such a case, it would be appropriate for a court in a *quo warranto*

---

[1] ORS 561.130(6) (a subsection of the statute at issue here) provides:

"Not more than five members shall belong to one political party. Party affiliation shall be determined by the appropriate entry on official election registration cards."

ORS 696.405(1) provides:

"The Real Estate Board is established within the Department of Commerce. The board shall consist of seven members appointed by the Governor to hold office for a period of four years, but to serve at the pleasure of the Governor. Five members of the board appointed by the Governor must have been, before the date of their appointment, real estate licensees actively engaged for five years in professional real estate activity in this state. Two members to be appointed by the Governor shall not be real estate licensees or have been connected with, or employed by, the Real Estate Division or its predecessor, the Oregon Real Estate Department. In case of a vacancy for any cause, the Governor shall make an appointment to become immediately effective for the unexpired term."

proceeding to inquire whether the appointee is so qualified. *See, e.g., State ex rel v. Kuhns,* 27 Del (4 Boyce) 416, 89 A 1 (1913); *People v. Galbraith,* 163 Mich 47, 127 NW 771 (1910). ORS 561.130(2) does not set forth any definite and certain standards for eligibility. Except for the requirement of Oregon citizenship, lawful title or right to defendant's office does not depend on her possessing any declared credentials. It would be inappropriate for a court to attempt to apply such a standard in a *quo warranto* proceeding.

The particular circumstances of this case further demonstrate the wisdom of requiring that the standards for determining whether a person holds office lawfully be specific and capable of definite application. The governor is to appoint to the Board an individual who is and will be "representative of consumer interests." As previously noted, such considerations are relative in essence, and different persons are likely to disagree whether a prospective appointee "possesses" those qualities. Thus, this decision is committed to the executive branch and not the courts.[2] Nevertheless, the majority effectively substitutes its own judgment for that of the governor by insisting on reaching the merits of the appointment. This is a dangerous precedent.

"A characteristic feature, and one of the cardinal and fundamental principles, of the American constitutional system is that the governmental powers are divided among the three departments of government, the legislative, executive, and judicial, and that each of these is separate from the others. The principle of separation of the powers of government operates in a broad manner to confine legislative powers to the legislature, executive powers to the executive department, and those which are judicial in character to the judiciary. The principle is not new; it certainly antedates the Federal Constitution, and indeed, has been traced back to Cicero, Aristotle, Locke, and Montesquieu. We are not a parliamentary government in which the executive branch is also part of the legislature." 16 Am Jur 2d 802-03, Constitutional Law, § 294. (Footnotes omitted.)

"Each of the several departments of government derives its authority directly or indirectly from the people

---

[2] *See State ex rel v. Kuhns,* 27 Del (4 Boyce) 416, 89 A (1913).

and is responsible to them. Each has exclusive cognizance of the matters within its jurisdiction, and is supreme within its own sphere, and none has the right to invade the sphere of operation of either of the others.

"In the exercise of the powers of government assigned to them severally, the departments operate harmoniously and independently of each other, and *the action of any one of them in the lawful exercise of its own powers is not subject to control by either of the others. Each department of government must exercise its own delegated powers,* and unless otherwise limited by the constitution, each exercises such inherent power as will protect it in the performance of its major duty; one department may not be controlled or even embarrassed by another department unless the constitution so ordains." 16 Am Jur 2d 811, Constitutional Law, § 298. (Emphasis supplied; footnotes omitted.)

As observed by the United States Supreme Court in *Keim v. United States,* 177 US 290, 293, 20 S Ct 574, 44 L Ed 774 (1900):

"The appointment to an official position in the government, even if it be simply a clerical position, is not a mere ministerial act, but one involving the exercise of judgment. The appointing power must determine the fitness of the applicant, whether or not he is the proper one to discharge the duties of the position. Therefore, it is one of those acts over which the courts have no general supervising power."

ORS 561.130(2) requires that a person appointed to one of the two consumer seats on the Board be "representative of consumer interests." There are no expressed standards by which to determine whether an appointee is *in fact* "representative" of those interests. That, in effect, presents a political question and it is well established that the courts do not belong in that arena. Given the facts of this case and the implications of our reasoning and decision here for future cases, a more specific and unequivocal statutory circumscription of the governor's discretion should be required before we intrude into the domain of the executive branch.

I can understand the majority's dilemma. The lines marking where the power of one branch ends and the power of another begins are not always clear. In addition, the authority of two branches will sometimes overlap, because

a complete separation of powers is either impractical or impossible. As judges, however, we should be able to recognize that a particular function is not primarily judicial. Clearly, appointing a person to the Board of Agriculture is an executive function. As discussed above, we must decline to use our limited authority to review such an appointment where, as here, the standards for it are relative, non-specific and otherwise unclear. Indeed, this case calls on us to engage in that most commendable activity known as judicial restraint. I would affirm.