Argued and submitted May 14, reversed and remanded on petition and cross-petition
August 6, reconsideration denied October 31, petition for review allowed
November 25, 1986 (302 Or 299)

1000 FRIENDS OF OREGON et al,
*Petitioners - Cross-Respondents,*

*v.*

WASCO COUNTY COURT et al,
*Respondents,*

CITY OF RAJNEESHPURAM et al,
*Respondents - Cross-Petitioners.*

(81-132; CA A39509)

723 P2d 1034

Kenneth M. Novack, Portland, argued the cause for petitioners - cross-respondents. With him on the brief were Ball, Janik and Novack, Mark J. Greenfield and Robert E. Stacey, Jr., Portland.

Leslie M. Roberts, Portland, argued the cause for respondents David Knapp, Richard Dennis Smith, Kent Bullick and Samadhi Matthews, and respondents - cross-petitioners City of Rajneeshpuram and Rajneesh Foundation International, formerly Chidvalis Rajneesh Meditation Center. With her on the brief were Sullivan, Josselson, Roberts, Johnson & Kloos and Rex Armstrong, Portland.

No appearance for respondent Wasco County.

Before Warden, Presiding Judge, and Van Hoomissen and Young, Judges.

WARDEN, P. J.

## WARDEN, P. J.

Petitioners seek review of an order in which the Land Use Board of Appeals (LUBA) held that certain undisclosed business dealings between Wasco County Judge Richard Cantrell[1] and those seeking to incorporate the City of Rajneeshpuram did not invalidate Cantrell's vote in favor of holding an election on a petition to incorporate the city. We reverse and remand.

This case is a companion to *1000 Friends of Oregon v. Wasco County Court,* 80 Or App 525, 723 P2d 1039 (1986) and involves a different portion of the same LUBA order.[2] In *1000 Friends of Oregon v. Wasco County,* 299 Or 344, 703 P2d 207 (1985) (*Wasco County IV*),[3] the Supreme Court remanded the Rajneeshpuram incorporation issue to LUBA with instructions to consider "[w]hether the Wasco County judge acted improperly, with prejudice of substantial rights, rendering the Wasco County Court order invalid." 299 Or at 376. Pursuant to the remand, LUBA permitted the parties to conduct discovery and then held an evidentiary hearing. On the basis of that evidence, LUBA found the following facts.[4]

Cantrell visited Rancho Rajneesh (the former Big Muddy Ranch) in August, 1981, together with other members of the Wasco and Jefferson County Courts.[5] At that time representatives of the ranch—who were also representatives of the petitioners for incorporation—told Cantrell that they

---

[1] As the Wasco County Judge, Cantrell had certain limited judicial functions. *See* ORS 5.010-5.030. However, the primary function of the county court is the conduct of county business. *See* ORS 203.111.

[2] Several respondents cross-petition for review of the LUBA order, raising the same issues which they raised in *1000 Friends of Oregon v. Wasco County, supra.* We reverse and remanded on the cross-petition for the reasons stated in that case.

[3] *See 1000 Friends of Oregon v. Wasco County Court, supra,* 80 Or App at 527, for a list of the previous appellate decisions concerning the incorporation of the City of Rajneeshpuram.

[4] All of the relevants fact are supported by substantial evidence. We need not consider petitioners' assignments attacking LUBA's findings as inadequate, because the facts which LUBA did find are sufficient for our decision. In a few instances LUBA improperly stated that substantial evidence supported certain findings rather than finding the facts in accordance with its view of the weight of the evidence. *See* ORS 197.830(11). That was only a mistake of terminology; it is clear from the order that LUBA in fact found in accordance with the evidence which it stated was substantial.

[5] The ranch is located in both counties, although the proposed city was only in Wasco County.

were interested in buying cattle. In early October, Cantrell and his wife dined at the ranch, and one of its leaders again raised the subject of buying cattle. Cantrell recommended that they buy "hamburger grade" cattle, which happened to be what he had for sale. He thereafter told the two Wasco County commissioners that he intended to sell cattle to the ranch, but he did not publicly disclose his dealings before the county court acted on the incorporation petition. He formally proposed to sell cattle to the ranch in a letter dated October 13, 1981, after the county court had rejected the original incorporation petition as legally deficient. On October 14, representatives of the proposed city presented a corrected petition.

Rancho Rajneesh leaders were conscious of the effect Cantrell's sale of cattle might have on his vote on the incorporation petition. One of the leaders asked the ranch foreman to keep the sale low-key so as not to embarrass Cantrell. Ma Anand Sheela, one of the ranch leaders, told the foreman to pay Cantrell's asking price, because "we needed him." On October 22, Cantrell and ranch officials reached an agreement on the sale. On November 4, the county court approved the incorporation election by a vote of two to one, Cantrell voting with the majority. On November 9, he delivered the cattle to the ranch's representatives.

LUBA found that Cantrell received more than the market price for the cattle, although it did not determine precisely how much more. It also found that the sale reflected an eager buyer, "one who was less concerned with obtaining the best bargain than with meeting the requirements of the seller." Although the buyers may have believed that the sale would improve their chances of favorable treatment on the incorporation petition, there is no proof that the sale was expressly contingent on Cantrell's vote. Neither was the transaction so one-sided that it was a sham or suggests a payoff. Because there was no direct connection between the sale and Cantrell's vote, LUBA held that he was not biased in a way that would invalidate his vote or the county's action.

Petitioners, who opposed the incorporation of Rajneeshpuram at the county hearing on November 4, 1981, assert that LUBA erred in failing to hold that Cantrell's activities deprived them of their right to an impartial decision-maker at the hearing. We hold that the county's action was

quasi-judicial, that petitioners were among those who had a due process right to an impartial decision-maker and that Cantrell's financial involvement with those seeking incorporation disqualified him from participating in the vote, at least in the absence of a full public disclosure of his dealings. We therefore hold that the county's action in setting a date for the incorporation election was invalid.

In *Fasano v. Washington Co. Comm,* 264 Or 574, 507 P2d 23 (1973), *overruled in part on other grounds, Neuberger v. City of Portland,* 288 Or 585, 607 P2d 722 (1980), the Supreme Court held that a decision to change the zoning of a parcel of property was a quasi-judicial rather than a legislative act and that parties to the decision were entitled to various rights, including an impartial decision-maker. 264 Or at 588. Since *Fasano* the determination of which land use decisions are quasi-judicial has created some difficultly. Shortly after *Fasano,* we held that a county's action on an incorporation petition was legislative rather than quasi-judicial. *Millersburg Dev. Corp. v. Mullen,* 14 Or App 614, 621-624, 514 P2d 367 (1973). However, that holding has been superseded by more recent Supreme Court cases and is no longer controlling.

■■ In *Strawberry Hill 4 Wheelers v. Benton Co. Bd. of Comm.,* 287 Or 591, 601 P2d 769 (1979), the court described a number of factors to consider in determining whether a county land use action is quasi-judicial.[6] "Generally, to characterize a process as an adjudication presupposes that the process is bound to result in a decision and that the decision is bound to apply preexisting criteria to concrete facts." 287 Or at 602. Other relevant factors are the importance of assuring that the decision is factually correct and that the decision-maker gives fair attention to affected individuals. The number of people affected and the size of the area covered are less important considerations. 287 Or at 603. That the decision-maker is applying the statewide planning goals to the decision is also an indication that its action is adjudicative. *See Neuberger v. City of Portland,* 288 Or 155, 165-166, 603 P2d

---

[6] The precise issue in *Strawberry Hill 4 Wheelers* was whether the county's action was reviewable by a writ of review. However, the criteria the court used in *Strawberry Hill 4 Wheelers,* to determine whether a land use decision is quasi-judicial and other criteria, which it suggested in that case might be helpful in other contexts, are appropriate guides for our determination in this case.

771 (1979), *rehearing den* 288 Or 507, 607 P2d 722 (1980). In this case, once the proponents presented the petition for an incorporation election, the process was bound to result in a decision. That decision had to be based in large part on preexisting criteria in the state incorporation statutes and the land use goals. Applying the goals necessarily involved extensive fact finding. A quasi-judicial process is best adapted to that function. We hold that the county's action on the incorporation petition was quasi-judicial.

■    When the Supreme Court held, in *Fasano v. Washington Co. Comm., supra,* that a quasi-judicial tribunal must be impartial, it did not state the basis for its holding. Since *Fasano,* we have recognized that its holding is based, at least in part, on the Due Process Clause of the Fourteenth Amendment. *See, e.g. Tierney v. Duris, Pay Less Properties,* 21 Or App 613, 628, 536 P2d 435 (1975). We therefore look to Fourteenth Amendment cases to determine petitioner's rights and Cantrell's responsibilities in this case.[7] To be entitled to procedural due process under the Fourteenth Amendment—and that is what petitioners seek in attacking Cantrell's participation in the decision—one must have either a liberty or property interest at stake. *Board of Regents v. Roth,* 408 US 564, 571-572, 92 S Ct 2701, 33 L Ed 2d 548 (1972). Petitioners do not claim to have a liberty interest involved. Although they do not have a conventional property interest, the Fourteenth Amendment's protections are not limited to such interests alone. Rather, it protects "the security of interests that a person has already acquired in certain benefits. These interests—property interests—may take many forms." 408 US at 576. A person has a property interest in a benefit if the person has a legitimate claim of entitlement to it. The constitution is only infrequently the source of that legitimate claim; rather, it is usually found in other law—often state law—outside the constitution.

■    Petitioners' interest in the Rajneeshpuram incorporation issue is their interest in ensuring that the county comply with the state's land use laws. By statute, petitioners

_____

[7] Under ORS 197.835(8)(a)(B), LUBA may reverse for a procedural failure only if petitioners show prejudice to their substantial rights—that is to their rights on the substantive issues involved. That the decision-maker was not impartial necessarily prejudices the rights of parties on the substance of the decision.

have standing to challenge the county's action if it violates those laws. Their interest is therefore one to which they have a legitimate claim of entitlement under state law. It is thus a property interest to which the Due Process Clause applies. *See* ORS 197.830(3); *Jefferson Landfill Comm. v. Marion Co.,* 297 Or 280, 282 n 1, 284, 686 P2d 310 (1984). The legislature has given them the same rights in the local government process as those of a person with a conventional, *Fasano* property interest. Because petitioners have a property interest in a proper decision, they may assert that Cantrell's activities denied them the right to an impartial decision-maker. We turn to that issue.

The crucial question is whether those activities, and Cantrell's failure to disclose them publicly, so tainted his role that the county's decision cannot stand.[8] In *Neuberger v. City of Portland, supra,* 288 Or at 589, the Supreme Court held that the Portland City Council was not improperly influenced by a proposal by a developer to sell land to the city at the same time that it sought a zone change for other property. The developer first proposed the sale at an open hearing, and the mayor and staff members explained the status of the proposal at later hearings. There were no covert dealings, nor was any council member's personal interest involved. *Neuberger* is obviously distinguishable from this case. Further, United States Supreme Court opinions are controlling on Fourteenth Amendment due process, and we turn now to them.

■ ■ A decision on the merits by an adjudicator with a personal interest in the outcome is a violation of due process. *Ward v. Village of Monroeville,* 409 US 57, 93 S Ct 80, 34 L Ed 2d 267 (1972); *Tumey v. Ohio,* 273 US 510, 47 S Ct 437, 71 L Ed 749 (1927). That rule applies to administrative as well as judicial adjudications. *Gibson v. Berryhill,* 411 US 564, 578-579, 93 S Ct 1689, 36 L Ed 2d 488 (1973); *see also Withrow v. Larkin,* 421 US 35, 47, 95 S Ct 1456, 43 L Ed 2d 712 (1975). The case closest to this one on its facts is *Commonwealth*

---

[8] Although the parties discuss the law concerning *ex parte* contacts at some length, LUBA correctly recognized that such contacts are not an issue in this case. *Ex parte* contacts refer to extra-record discussions on facts in issue. There is no evidence that Cantrell and representatiaves of the ranch had such contacts. The issue, rather, is one of implied bias. In deciding it, we do not consider the suggestions in the record that ranch officials hoped that the cattle sale would make Cantrell favorably inclined to their position. LUBA did not find that Cantrell was aware of that hope or that he was influenced by it.

*Corp. v. Casualty Co.,* 393 US 145, 89 S Ct 337, 21 L Ed 2d 301 (1968). Although it involved section 10 of the United States Arbitration Act, 9 USC § 10, rather than the Due Process Clause of the Fourteenth Amendment, it is clear that the Supreme Court considered the standards to be the same; it relied primarily on *Tumey v. Ohio, supra,* a due process case, in reaching its decision.

In *Commonwealth Corp.,* the petitioner, a subcontractor, challenged an arbitration award on the ground that the prime contractor was a regular customer of the engineering consulting firm of one of the arbitrators. Although the prime contractor had not done business with the firm in question for about a year immediately before the arbitration, over a period of four or five years before the arbitration it had paid fees totalling $12,000, and the arbitrator had performed services on the projects involved in the arbitration. Although the prime contractor knew of the relationship, neither it nor the arbitrator disclosed it to the petitioner. In holding the arbitration void, the court emphasized the arbitrator's failure to disclose, which had prevented the petitioner, if it had so desired, from objecting to his serving. The lack of evidence of actual misconduct was irrelevant. "[A]ny tribunal permitted by law to try cases and controversies not only must be unbiased but also must avoid even the appearance of bias." 393 US at 150.

Cantrell should have disclosed his dealings with the ranch officials and, having failed to do so, was disqualified to sit on the petition for the incorporation election. Although we do not expect part-time local government officials—nor do we expect part-time arbitrators—to forego their normal business activities, when those activities include doing business with one of the parties who will be affected by a quasi-judicial decision, an official must disclose the business relationship to other affected parties. Because Cantrell did not take even that step, we need not decide whether he could have participated after disclosure if petitioners had objected. Under the circumstances, his participation made the county's action void. LUBA erred by holding otherwise.[9]

---

[9] Respondents argue that the decision of the Oregon Government Ethics Commission not to pursue a complaint against Cantrell for violation of the Government Ethics Act collaterally estops petitioners from asserting that his dealings invalidated his vote.

Reversed and remanded on petition and on cross-petition.

---

We disagree. Even if an Ethics Commission determination that an individual has not violated the Act could ever affect a judicial determination of the validity of the official's public acts, it did not do so here. A decision not to pursue a complaint is not a decision on the merits after a full evidentiary hearing and has no effect on collateral litigation. In addition, the Commission has jurisdiction under the Government Ethics Act, not under the requirements of Fourteenth Amendment Due Process on which we base our decision. *See also* ORS 244.390 (penalties provided in the Ethics Act are in addition to and not in lieu of other applicable penalties).