Argued and submitted January 24, 2005; resubmitted en banc June 15, affirmed August 17, 2005

STATE OF OREGON ex rel CITY OF POWERS
and City of Lakeside,
Oregon municipal corporations,
and Arthur J. Schmidt, Eddie Gowan,
Noble Adamek, and Claude Coffman,
*Appellants,*

*and*

CITY OF MYRTLE POINT,
an Oregon municipal corporation,
and Ferris Pinniger,
*Plaintiffs,*

*v.*

COOS COUNTY AIRPORT DISTRICT,
a quasi-municipal corporation of Oregon,
and Judy Weeks, Sue Richardson,
Helen Brunell Meneau, Clair Jones,
and Michael Crow,
*Respondents.*

03-CV0119; A122358

119 P3d 225

Richard D. Rodeman argued the cause and filed the brief for appellants.

Jerry O. Lesan argued the cause and filed the brief for respondents.

Before Brewer, Chief Judge, and Edmonds, Landau, Haselton, Armstrong, Linder, Wollheim, Schuman, and Ortega, Judges.

ARMSTRONG, J.

Edmonds, J., concurring.

**ARMSTRONG, J.**

Plaintiffs appeal a judgment dismissing their claims for lack of subject matter jurisdiction. We affirm.

Plaintiffs brought this action to challenge the validity of the formation of the Coos County Airport District. Pursuant to ORS 838.010, the city of North Bend passed a resolution calling for the formation of the airport district to finance the operation of its airport.[1] The proposed district was to include all of the territory within Coos County. North Bend filed the resolution with the Coos County Board of Commissioners, which held hearings on the matter as required by ORS 198.805. After those hearings, the county placed the matter on the November 2002 general election ballot, as required by ORS 198.815. In the election, the majority of voters approved the formation of the district; consequently, on December 4, 2002, the county issued an order forming the district.

On February 27, 2003, plaintiffs—three incorporated cities located in Coos County and several taxpayers in the airport district—filed this action against the district and the five individuals elected at the November 2002 election to serve on its governing board. Plaintiffs' amended complaint, filed by the city attorney for the cities of Lakeside and Myrtle Point, contained three claims. The first claim alleged that the formation of the district was flawed because the county had not obtained resolutions from the plaintiff cities supporting the formation of the district, as required by ORS 198.720(1).[2]

---

[1] In part, ORS 838.010 provides:

"(1) In addition to initiatory action authorized by ORS 198.705 to 198.955, proceedings to establish a district may be initiated by:

"* * * * *

"(b) A resolution adopted by the governing body of any city owning an airport within the proposed district and filed with the governing body of the principal county in the proposed district, petitioning that body to call an election.

"* * * * *

"(3) After initiatory action has been taken pursuant to this section, airport district formation shall be conducted and completed as provided by ORS 198.705 to 198.955 * * *."

[2] In part, ORS 198.720(1) provides that, "[i]f any part of the territory subject to a petition for formation or annexation is within a city, the petition shall be

The second claim alleged that the individual defendants were unlawfully holding office as the airport district's commissioners because the district had not been lawfully formed. Plaintiffs brought both claims under ORS 30.510, which provides the statutory action that replaced the common-law writ of *quo warranto*.[3]

The third claim sought a declaration that the airport district's formation violated the Oregon Constitution. After realleging the facts set forth in their first two claims, plaintiffs alleged in their third claim:

> "In the event that the first two causes of action are not sustained, the plaintiffs (on their own standing, and not upon the relation of the State of Oregon for this count only) allege that the formation of the Coos County Airport District under ORS Chapter 838 and 198 is unconstitutional in violation of the provisions of Oregon Constitution Art IV § 2 (home rule provisions)."[4]

Rather than answering plaintiffs' complaint, defendants moved to dismiss the complaint for lack of subject matter jurisdiction and for failure to state ultimate facts sufficient to constitute a claim. Defendants argued that actions under ORS 30.510 must be commenced and prosecuted by

---

accompanied by a certified copy of a resolution of the governing body of the city approving the petition."

[3] ORS 30.510 provides:

"An action at law may be maintained in the name of the state, upon the information of the district attorney, or upon the relation of a private party against the person offending, in the following cases:

"(1) When any person usurps, intrudes into, or unlawfully holds or exercises any public office, civil or military, or any franchise within this state, or any office in a corporation either public or private, created or formed by or under the authority of this state; or,

"(2) When any public officer, civil or military, does or suffers an act which, by the provisions of law, makes a forfeiture of the office of the public officer; or,

"(3) When any association or number of persons acts within this state, as a corporation, without being duly incorporated."

[4] Plaintiffs appear to argue that their third claim is a facial challenge to the constitutionality of the statutes under which the airport district was formed. That argument is belied by what plaintiffs actually pleaded. *See City of Eugene v. Lincoln*, 183 Or App 36, 41, 50 P3d 1253 (2002) (explaining that a facial challenge asserts that the legislative enactment itself violated the constitution, whereas an as-applied challenge asserts that an executive action under that law violated the constitution).

the appropriate district attorney and that, because the district attorney for Coos County had not commenced and prosecuted the action, the trial court lacked subject matter jurisdiction of plaintiffs' first two claims. With regard to the declaratory judgment claim, defendants argued that it must be dismissed because a writ of review was plaintiffs' exclusive remedy to challenge the formation of the district and that, in any event, the claim was untimely because it was brought more than 60 days after the county had issued the order that plaintiffs challenged. The trial court granted defendants' motion and dismissed plaintiffs' complaint with prejudice.

Before we address plaintiffs' arguments on appeal, we briefly describe the statutes that govern the formation of airport districts. ORS 838.005 to 838.075 authorize the formation of airport districts and prescribe the scope of their authority. As noted above, ORS 838.010(1)(b) provides that one method to initiate the formation of an airport district is by "[a] resolution adopted by the governing body of any city owning an airport within the proposed district and filed with the governing body of the principal county in the proposed district, petitioning that body to call an election." ORS 838.010(3) provides that, once the formation of an airport district has been initiated, the District Boundary Procedure Act, ORS 198.705 to 198.955, governs the formation process, except in certain circumstances not applicable here. ORS 198.785, a part of the act, provides for judicial review of aspects of the effort to form a district.

■ On appeal, plaintiffs first assign error to the trial court's conclusion that actions under ORS 30.510 must be commenced and prosecuted by the district attorney for the district in which the case is triable. Our recent decision in *Mabon v. Wilson*, 198 Or App 340, 108 P3d 598, *rev allowed*, 338 Or 680 (2005), issued after this case was argued, almost entirely disposes of plaintiffs' arguments on that point. In *Mabon*, we held that ORS 30.610 requires that actions brought under ORS 30.510 be commenced and prosecuted by the appropriate district attorney and that that requirement

is jurisdictional.[5] 198 Or App at 343. As noted above, the district attorney for Coos County has not participated in this proceeding. Seeking to avoid the dismissal for lack of subject matter jurisdiction that would otherwise result from the application of *Mabon* to their case, plaintiffs insist that the city attorney who commenced and prosecuted their claims is the functional equivalent of the district attorney for purposes of ORS 30.610.

To support that novel argument, plaintiffs simply cite a number of statutes without further analysis. None of the cited statutes equates a city attorney with a district attorney for purposes of ORS 30.610. Many of the statutes cited by plaintiffs do, in fact, give city attorneys and district attorneys similar specific authority, *e.g.*, ORS 33.055, or define the term "district attorney" to include "city attorney" for limited purposes, *e.g.*, ORS 131.005(8). However, rather than bolstering plaintiffs' argument, those statutes undermine it by demonstrating that, when the legislature wants city attorneys and district attorneys to have equivalent authority, it provides so explicitly. The legislature has not done that with regard to ORS 30.610. The trial court correctly determined that it lacked subject matter jurisdiction of plaintiffs' first two claims.

■ The remaining question for us is whether the trial court had jurisdiction of plaintiffs' declaratory judgment claim. As the Supreme Court emphasized in *League of Oregon Cities v. State of Oregon*, 334 Or 645, 652, 56 P3d 892 (2002), "[a]lthough a trial court has broad power to provide

---

[5] ORS 30.610 provides:

"The actions provided for in ORS 30.510 to 30.640 shall be commenced and prosecuted by the district attorney of the district where the same are triable. When the action is upon the relation of a private party, as allowed in ORS 30.510, the pleadings on behalf of the state shall be signed by the relator as if the relator were the plaintiff, or otherwise as provided in ORCP 17; in all other cases the pleadings shall be signed by the district attorney in like manner or otherwise as provided in ORCP 17. When an action can only be commenced by leave, as provided in ORS 30.580, the leave shall be granted when it appears by affidavit that the acts or omissions specified in that section have been done or suffered by the corporation. When an action is commenced on the information of a private person, as allowed in ORS 30.510, having an interest in the question, such person, for all the purposes of the action, and as to the effect of any judgment that may be given therein, shall be deemed a coplaintiff with the state."

declaratory relief, it lacks subject matter jurisdiction under ORS 28.010 if some other *exclusive* remedy exists. * * * In addition, the trial court should decline to exercise its jurisdiction under ORS 28.010 if some *more appropriate* remedy exists." (Citation omitted; emphasis in original.) We first address whether some other exclusive remedy exists, because that question is jurisdictional. *See Dental v. City of Salem*, 196 Or App 574, 579, 103 P3d 1150 (2004) (addressing exclusivity question first).

ORS 198.785(2) provides:

"An action to determine the validity of a formation or change of organization proceeding may also be brought pursuant to ORS 33.710 and 33.720 or 34.010 to 34.100."

This much is clear from ORS 198.785: The formation of the airport district was subject to judicial review by either the method provided in ORS 33.710 and ORS 33.720 or the method provided in ORS 34.010 to 34.100—specifically, the writ of review.

ORS 33.710 and ORS 33.720 set forth the method by which certain local governmental entities can seek judicial examination of the legality of their establishment or of some of the actions that they take. Assuming that the airport district is the type of governmental entity that may avail itself of the proceeding provided by ORS 33.710 and ORS 33.720, such a proceeding must be initiated by the governing body of the governmental entity. ORS 33.710(2). Consequently, the proceeding established by ORS 33.710 and ORS 33.720 was not available to plaintiffs to challenge the formation of the airport district, even if the airport district could seek a determination of the validity of its own formation in such a proceeding.

The writ of review, on the other hand, is not so limited and was, in fact, available to plaintiffs pursuant to ORS 198.785 to challenge the formation of the airport district.[6] We

---

[6] We need not decide whether the formation of the Coos County Airport District was a land use decision, in which case plaintiffs' exclusive remedy would be with the Land Use Board of Appeals (LUBA). ORS 34.020. Even if the formation of that district were a land use decision, the result in this case would be the same. That is, the trial court lacked subject matter jurisdiction over plaintiffs' claim for declaratory judgment because another exclusive remedy existed, whether that exclusive remedy was a writ of review or an appeal to LUBA.

have recognized that, when the writ of review is available, it is the exclusive remedy and that a court lacks jurisdiction over a declaratory judgment action that seeks review of governmental actions that are subject to review by writ of review. *See, e.g., Pangle v. Bend-Lapine School District,* 169 Or App 376, 384-85, 10 P3d 275 (2000), *rev den,* 332 Or 558 (2001); *Shipp v. Multnomah County,* 133 Or App 583, 588, 591, 891 P2d 1345, *rev den,* 321 Or 246 (1995). ORS 34.020 provides that, with certain exceptions not applicable here, "any party to any process or proceeding before or by any inferior court, officer, or tribunal may have the decision or determination thereof reviewed for errors, as provided in ORS 34.010 to 34.100, *and not otherwise.*" (Emphasis added.) "Not otherwise" means that a person who may challenge a governmental decision by writ of review may not bring an action for a declaratory judgment regarding the decision. *Pangle,* 169 Or App at 384; *Shipp,* 133 Or App at 588.

Significantly, however, the cases that have held that ORS 34.020 operates to deprive trial courts of jurisdiction over declaratory judgment claims have all involved challenges to governmental actions that were judicial or quasi-judicial in nature. *See, e.g., Pangle,* 169 Or App at 383-85. None has involved a challenge to a legislative action. That is not surprising because ORS 34.020 applies only to judicial and quasi-judicial actions.

Here, however, the legislature's enactment of ORS 198.785 has made the writ of review applicable to decisions to form airport districts, and it is at least arguable that such a

---

Further, we note that a "land use decision" includes

"[a] final decision or determination made by a local government or special district that concerns the adoption, amendment or application of

"(i) The [statewide planning] goals; [or]

"(ii) A comprehensive plan provision[.]"

ORS 197.015(10)(a)(A). Several statutes applicable to district formation suggest that either the statewide planning goals or comprehensive plan provisions might be applicable to a formation decision in certain circumstances. *See* ORS 197.175; ORS 198.805; ORS 199.462. However, neither party has briefed whether the county's action was a land use decision, nor is it apparent from the record whether any provisions of the Coos County Comprehensive Plan or the statewide planning goals were applicable to the formation of the airport district. Thus, we cannot address whether the formation of the district was a land use decision subject to LUBA's exclusive review.

decision is a legislative rather than a quasi-judicial decision. Consequently, the resolution of this case could require us to address whether the legislature intended the exclusivity language in ORS 34.020 to make the writ of review the exclusive means to review the formation of airport districts even if the decision to form them was a legislative decision rather than a quasi-judicial decision.

Although the legislature could have intended its cross-reference to chapter 34 in ORS 198.785 to trigger the exclusivity provision of ORS 34.020, such an intention is far from clear. For example, as discussed below, at least eight other statutes use cross-references to chapter 34 to make the writ of review applicable to particular governmental actions, yet the statutes also expressly provide that the writ is the exclusive means to review those actions.[7] If a cross-reference to chapter 34 alone could be understood to be sufficient to trigger the exclusivity language in ORS 34.020, then the additional exclusivity language in those eight statutes would be superfluous. The one certain rule in this area is that the exclusivity language in ORS 34.020 makes the writ of review the exclusive means by which quasi-judicial and judicial actions of local governments can be challenged. For those reasons, the prudent way to resolve this case is to apply the framework articulated in *Strawberry Hill 4 Wheelers v. Benton Co. Bd. of Comm.*, 287 Or 591, 601 P2d 769 (1979), to determine whether the formation of the airport district by the county was a quasi-judicial act or a legislative act. As we explain below, we conclude that the formation of the airport district was a quasi-judicial act that was exclusively reviewable by writ of review. Consequently, we do not resolve whether the legislature intended the decision to form the district to be reviewable exclusively by writ of review if the decision were a legislative decision.

Before we conduct that analysis, however, we are obliged to address some of the concurrence's criticisms of our analysis. The concurrence insists that our analysis jumps the gun in that it does not begin with a full-scale *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993), analysis of the text, context, and legislative history of ORS

---

[7] Those statutes are cited at 201 Or App 233 n 8.

198.785. As the concurrence views it, our analysis should begin and end with ORS 198.785 because, from the scant tea leaves available in the legislative history, the concurrence divines that the legislature's purpose in passing ORS 198.785 was to "provide uniformity in the review procedures for most special districts." 201 Or App at 249 (Edmonds, J., concurring). Consequently, despite the absence of any exclusivity language in ORS 198.785, the concurrence would interpret the statute to identify the universe of mechanisms by which a person can seek judicial review of the formation of an airport district. Based on that conclusion, the concurrence would hold that declaratory relief was not available to plaintiff.

The concurrence proposes a tenable alternative analysis in this case. However, we decline to adopt its preferred analysis. The gloss that the concurrence puts on the construction of ORS 198.785 makes it appear to be a deceptively simple way to resolve this case. In reality, the question whether the legislature intended ORS 198.785 to provide an exclusive list of judicial means to address district formation issues is far more complex. Not only do we harbor doubts about the concurrence's conclusion, but, more importantly, we recognize that the concurrence's approach carries with it consequences that reach beyond the case before us. Therefore, as we explain further below, we believe that it would be imprudent for us to resolve this case based on the concurrence's reasoning.

We first identify the potential flaws in the concurrence's *PGE* analysis of ORS 198.785. At the level of the text of ORS 198.785, the concurrence downplays the absence of any exclusivity language in ORS 198.785. In fact, under our existing case law, that absence can be quite significant. *See Oregonians for Sound Economic Policy, Inc. v. SAIF*, 187 Or App 621, 630, 69 P3d 742, *rev den*, 336 Or 60 (2003) (explaining that "appropriate inquiry is whether the legislature has enacted statutory wording that communicates an intention that a particular statutory scheme is exclusive"); *Dental*, 196 Or App at 579 (holding that, because provision allowing judicial review of public contracting decisions did not contain exclusive language, declaratory relief could be available).

Related statutes provide additional context by which we should analyze the absence of exclusivity language in ORS 198.785. Our review of the Oregon Revised Statutes reveals eight instances in which the legislature made a particular governmental action reviewable by writ of review *and* also expressly stated that the writ of review was exclusive.[8] One of those statutes, ORS 341.188, was enacted by the very Legislative Assembly that enacted ORS 198.785. *See* Or Laws 1971, ch 513, § 29. In those statutes, the legislature troubled itself to make review provisions that were adopted by cross-reference to chapter 34 exclusive, despite the fact that ORS 34.020 contains its own exclusivity language. Without question, the legislature knows how to make a reference to chapter 34 (or any other statute) an exclusive remedy when it so desires. Because it did not do that in ORS 198.785, it would appear that the legislature did not intend for the statute to provide the exclusive remedies. *See Emerald PUD v. PP&L*, 302 Or 256, 269, 729 P2d 552 (1986) ("Ordinarily, when the legislature includes an express provision in one statute but omits such a provision in another statute, it may be inferred that such an omission was deliberate." (Internal quotation marks omitted.)).

Nonetheless, the concurrence strives to make the text and context of ORS 198.785 ambiguous by employing a

---

[8] *See* ORS 223.302(2) (providing that decision of local government expending system development charge revenues "shall be judicially reviewed only as provided in ORS 34.010 to 34.100"); ORS 223.304(7)(b) ("A person shall request judicial review of the methodology used for calculating a system development charge only as provided in ORS 34.010 to 34.100."); ORS 223.309(2)(d) ("The decision of a local government to increase the system development charge by modifying the list [of capital improvements] may be judicially reviewed only as provided in ORS 34.010 to 34.100."); ORS 279B.420 (providing that "[a]n alleged violation committed by a local contracting agency is reviewable through a writ of review" and that violations are "subject to judicial review only as provided by this section"); ORS 307.533(1) ("Review of a denial of an application under ORS 307.527, or of the termination of an exemption under ORS 307.529, *shall* be as provided by ORS 34.010 to 34.100." (Emphasis added.)); ORS 307.680(1) ("Review of a denial of an application under ORS 307.660, or of the termination of an exemption under ORS 307.670, *shall* be as provided by ORS 34.010 to 34.100." (Emphasis added.)); ORS 341.185 ("If the board refuses to make [a] requested adjustment in the boundaries [of a community college district zone], the aggrieved elector may appeal from the decision of the board to the circuit court. The appeal *shall* be by writ of review." (Emphasis added.)); ORS 458.060(1) ("Review of a denial of an application under ORS 458.040 *shall* be as provided by ORS 34.010 to 34.100." (Emphasis added.)).

canon of construction of questionable relevance. The concurrence relies on the maxim that, " 'whenever a statute limits a thing to be done in a particular form, it necessarily includes in itself a negative, *viz.*, that the thing shall not be done otherwise.' " *Scott v. Ford*, 52 Or 288, 296, 97 P 99 (1908) (quoting 19 *Cyclopedia of Law and Procedure* 26-27 (William Mack ed. 1905)). That is simply another formulation of the maxim *expressio unius est exclusio alterius* (the expression of one is the exclusion of another). *See* 19 *Cyclopedia of Law and Procedure* 23-27 (William Mack ed. 1905) (using the language quoted by the concurrence to explain the meaning of the Latin canon).

**5.** Although the concurrence repeatedly describes the maxim as a "rule," both we and the Supreme Court have repeatedly warned the bench and bar that *expressio unius* is not a rule of law but is instead a guide to understanding legislative intent. *See, e.g., Sunshine Dairy v. Peterson et al.*, 183 Or 305, 324, 193 P2d 543 (1948); *State ex rel Consumer League v. Zielinski*, 60 Or App 654, 658 n 3, 654 P2d 1161 (1982), *rev den*, 294 Or 682 (1983); *Miller v. Employment Division*, 45 Or App 1117, 1123, 610 P2d 293 (1980). The maxim "is to be applied with caution and merely as an auxiliary rule to determine the legislative intention." *Cabell et al. v. City of College Grove et al.*, 170 Or 256, 281, 130 P2d 1013 (1942); *see also* Frank E. Horack Jr., 2 *Sutherland Statutory Construction* § 4917, 418 (3d ed 1943) (warning that the maxim "requires great caution in its application, and in all cases is applicable only under certain conditions"). One must not "render to it fealty that is akin to a navigator's respect for the pole star." *Vaughn v. Langmack*, 236 Or 542, 574, 390 P2d 142 (1964) (Rossman, J., dissenting).

The maxim is not applicable here because the legislature's statement of mechanisms for judicial review of district formation decisions is not limited to ORS 198.785. ORS 28.010 provides that "[c]ourts of record within their respective jurisdictions shall have power to declare rights, status and other legal relations, *whether or not further relief is or could be claimed.*" (Emphasis added.) In light of ORS 28.010, we cannot say that any particular statute setting forth a remedy or remedies—such as ORS 198.785—delimits the universe of mechanisms by which a person can seek judicial

relief unless some other statute expressly limits the authority granted by ORS 28.010. The legislature knows how to do this. *See* ORS 279B.425(8) ("The procedure provided in this section is the exclusive means of judicial review of the decision of the director or board. * * * [D]eclaratory and injunctive remedies are not available."); ORS 279C.450(6) (same). It has not done so here. Thus, we do not have the faith that the concurrence does that the maxim can be used in this instance to discern the legislature's intent in adopting ORS 198.785.

But based on that questionable canon, the concurrence declares ORS 198.785 to be ambiguous and proceeds to the legislative history of the statute. It admittedly discovers "no specific history that indicates that the legislature intended the writ of review procedure to be the exclusive procedure for citizens to challenge the formation of special districts." 201 Or App at 248 (Edmonds, J., concurring). But the lack of any specific evidence does not prevent the concurrence from concluding that "it can be easily inferred from the legislative history that the creation of the writ of review remedy in ORS 198.785(2) was part of the legislature's overall intention to provide uniformity in the review procedures for most special districts." 201 Or App at 249 (Edmonds, J., concurring).[9] It makes that inference from the repeal of a number of statutes, scattered throughout the Oregon Revised Statutes, that spoke to the review of district formation decisions. But the concurrence overlooks two statutes that, as explained below, the legislature did not explicitly repeal when it enacted ORS 198.785. Those two statutes raise a serious

---

[9] Among other problems with its analysis, the concurrence mistakenly equates uniformity with exclusivity. The 1971 enactment of ORS 198.785 and concomitant repeal of various inconsistent statutes that applied to the judicial review of different types of districts brought uniformity to the review of formation decisions for districts that are subject to ORS 198.785. However, the uniformity that the 1971 legislation achieved is not undermined by the availability of declaratory relief under ORS chapter 28. To the extent that declaratory relief remains available to address district formation decisions that are subject to ORS 198.785, that relief is uniformly available to the extent that it does not conflict with ORS 198.785. In other words, no type of district that is subject to ORS 198.785 would be treated differently with regard to the use of declaratory relief to address formation decisions, which means that the 1971 legislation can achieve uniformity for the review of formation decisions for districts that are subject to ORS 198.785 even if ORS 198.785 does not establish an exclusive review mechanism.

question, the answer to which has consequences beyond this case.

For convenience at this point, we again quote the text of ORS 198.785(2):

"An action to determine the validity of a formation or change of organization proceeding may also be brought pursuant to ORS 33.710 and 33.720 or 34.010 to 34.100."

ORS 198.705(9) defines "formation" for purposes of ORS 198.785 to include "incorporation, organization or creation of a district." For purposes of ORS 198.785, " 'district' has the meaning given that term by ORS 198.010(2) to (4), (6) to (14) and (17) to (23)." ORS 198.710. By defining "district" in that way, the legislature made ORS 198.785 inapplicable to certain types of districts identified in ORS 198.010.

One type of district to which ORS 198.785 is inapplicable is a people's utility district—defined as a district by ORS 198.010(1) but excluded from the definition of district for purposes of ORS 198.785 by ORS 198.710. The principal act describing the powers of a people's utility district is codified in ORS chapter 261. ORS 261.605 to 261.635 describe the court proceeding by which, among other things, the creation of a people's utility district may be challenged. ORS 261.630 provides that electors of the district may bring such an action. When it enacted ORS 198.785, the legislature did not repeal ORS 261.605 to 261.635. *See* Or Laws 1971, ch 727, § 203. The legislature had good reason not to do that: ORS 198.785 does not apply to public utility districts.

However, it *does* apply to sanitary authorities. ORS 198.010(12) defines "district," for purposes of chapter 198, to include sanitary authorities, and has from its enactment in 1971. Or Laws 1971, ch 23, § 2. ORS 198.710 makes ORS 198.785 applicable to sanitary authorities. Thus, if a party wanted to challenge the formation of a sanitary authority, that party could do so under ORS 198.785. However, ORS 450.980 provides, as it has from its enactment in 1955, that

"[t]he provisions of ORS 261.605 to 261.630 relating to court proceedings to test the validity of acts and proceedings of People's Utility Districts hereby are made

applicable, so far as practicable, to the proceedings and acts of sanitary authorities."

The legislature did not repeal ORS 450.980 when it enacted ORS 198.785. Or Laws 1971, ch 727, § 203. Thus, it appears that a party wishing to challenge the formation of a sanitary authority can also do so under the procedure set forth in ORS 261.605 to 261.630.

■  Ultimately, the serious question raised by the concurrence's approach is whether the legislature intended to repeal ORS 450.980 by implication. The concurrence's determination that ORS 198.785 provides the exclusive mechanisms for judicial review of district formations requires the conclusion that the legislature indeed repealed ORS 450.980 by implication. We do not reject the possibility that the legislature so intended. However, such a conclusion "is not favored and must be established by plain, unavoidable, and irreconcilable repugnancy between the prior and subsequent statutes." *City of Lowell v. Wilson,* 197 Or App 291, 309, 105 P3d 856 (2005) (internal quotation marks omitted). The concurrence does not establish that kind of repugnancy, the parties do not brief the issue, and ORS 450.980 is otherwise irrelevant to the question before us in this case. For those reasons, we believe that it would be imprudent to follow the path taken by the concurrence. We are aware of no authority that requires us to answer the sticky question whether ORS 198.785 is exclusive before we can resolve this case, as we do, by addressing whether the formation of the airport district was a quasi-judicial act or a legislative act. Thus, we return to the latter question.

■  As noted above, *Strawberry Hill 4 Wheelers* provides the framework for addressing that question.[10] Procedural

---

[10] The concurrence questions how *Strawberry Hill 4 Wheelers* can apply to the determination whether the formation of the airport district was a quasi-judicial act or a legislative act. It reasons that the statutes that we must apply, whether ORS 34.020, ORS 198.785, or ORS 838.010, were adopted before the court decided *Strawberry Hill 4 Wheelers*, so the analysis that the court used in *Strawberry Hill 4 Wheelers* to distinguish between quasi-judicial and legislative acts could not have been an analysis that the legislature contemplated when it enacted the statutes. 201 Or App at 245-46 (Edmonds, J., concurring). *Strawberry Hill 4 Wheelers* simply gave content to the distinction between quasi-judicial and legislative acts that the legislature had embodied in the statutes that are at issue here. There is no reason to believe that the legislature's decision to enact those statutes turned on a

requirements such as notice and public hearings can indicate a quasi-judicial process, but they alone cannot render a process an adjudication. *Id.* at 604. Instead, "at least three other considerations generally bear on the determination of whether governmental action represented an 'exercise of * * * quasi-judicial functions.' " *Hood River Valley v. Board of Cty. Commissioners*, 193 Or App 485, 495, 91 P3d 748 (2004) (quoting ORS 30.040(1)). Generally, a quasi-judicial process (1) necessarily results in a decision, (2) applies preexisting criteria to concrete facts, and (3) "is directed at a closely circumscribed factual situation or a relatively small number of persons." *Strawberry Hill 4 Wheelers*, 287 Or at 602-03. But, as we explained in *Hood River Valley*,

> "[t]hose three general criteria do not * * * describe a bright-line test. * * * *Strawberry Hill 4 Wheelers* contemplates a balancing of the various factors which militate for or against a quasi-judicial characterization and does not create [an] all or nothing test[.] * * * In particular, we noted that the criteria are applied in light of the reasons for their existence—*viz.*, the assurance of correct factual decisions and the assurance of fair attention to individuals particularly affected."

193 Or App at 495 (internal quotation marks omitted; brackets in *Hood River Valley*).

■ Here, the applicable statutes require notice and a public hearing. ORS 198.800; ORS 198.805. In fact, the county held two public hearings regarding the airport district. But, as *Strawberry Hill 4 Wheelers* notes, that alone does not establish that the decision to form the airport district was quasi-judicial rather than legislative because "nothing prevents a law or charter from imposing detailed procedural safeguards such as notice, prior inquiries and reports,

---

particular understanding of the distinction between quasi-judicial and legislative acts, a distinction that has been applied to the judicial review of governmental actions in Oregon for nearly a century. *Hodgdon v. Goodspeed*, 60 Or 1, 5, 118 P 167 (1911) (explaining that the writ of review is available to review judicial or *quasi-judicial* acts); *Vedder v. Marion County*, 28 Or 77, 83, 36 P 535 (1895) (recognizing that the writ of review is not available to review legislative acts). Hence, to the extent that this case can be resolved by deciding whether the decision to form the airport district was a quasi-judicial or a legislative act, and it can be, there is nothing improper with applying the analysis in *Strawberry Hill 4 Wheelers* to decide the issue.

and public hearings on a process of *legislative* policymaking." 287 Or at 604 (emphasis added). Thus, more is required.

The fact that the county was compelled to reach a decision regarding the airport district once it was presented with the City of North Bend resolution cuts in favor of concluding that the process was quasi-judicial. ORS 198.785(1) allows "any citizen of the affected district" to seek a writ of mandamus to compel a county board to call an election on the formation of a district if the board refuses to do so. The writ of mandamus is not available to compel legislative acts. *See Cordill v. City of Estacada*, 67 Or App 481, 486, 678 P2d 1257 (1984) ("[M]andamus will not issue to control a city's exercise of [its legislative] function."). The statute further provides that, "[i]f it is decided by the circuit court that the petition for formation * * * is legally sufficient and the requisite number of signatures is attached, the circuit court *shall* direct the county board to call the election." ORS 198.785(1) (emphasis added). Thus, the county lacked the option of taking no action at all on North Bend's request to form the airport district. If forming the district were a legislative action, then the county would have had the option to take no action on the formation request.

ORS 198.800, ORS 198.805, ORS 198.810, and ORS 198.820 further support that conclusion. ORS 198.800(1) requires that, when presented with a petition or resolution for the formation of an airport or other district, the county board must either file the petition with the boundary commission (if it is within the jurisdiction of a boundary commission) or set a date for a hearing on the petition. ORS 198.805(1) requires that the county "shall hear the petition and determine, in accordance with the criteria prescribed by ORS 199.462, if the area could be benefitted by the formation of the district." ORS 198.810 requires that, if after the hearing the county board approves the petition, the board must take further steps to ensure the formation of the district— that is, it must either call an election in certain circumstances or set a final hearing in others. The implication of ORS 198.805 and ORS 198.810 is that if the county board does not determine that the area could benefit by the formation of the district, then it will disapprove the formation. That too is the type of resulting decision contemplated by the

first *Strawberry Hill 4 Wheelers* factor. Finally, ORS 198.820 requires the county board to issue an order forming the district if it determines that the majority of votes cast at the called election were in favor of the formation of the district. From the statutory scheme it is evident that a county board lacks the discretion simply not to act. Thus, the process of forming an airport district appears to be more quasi-judicial than legislative in that respect.

The statutes also require the county board to apply preexisting criteria to concrete facts. Not only must the county board determine whether the area could be benefitted by the formation of a district, but it also may alter the boundaries after

> "consider[ing] the benefit the proposed district will have within the territory in or out of the proposed district. The board shall not modify the boundaries so as to exclude from the proposed district any land which could be benefitted by its formation, nor shall there be included any land which will not, *in the judgment of the board,* be benefitted."

ORS 198.805(1) (emphasis added). Furthermore, ORS 198.805 requires the county to "consider the criteria prescribed by ORS 199.462" in exercising its district formation authority.

Those statutes create a quasi-judicial process in that they require the application of preexisting criteria to concrete facts. Just as the determination that a particular property is benefitted or not benefitted by an assessment is an adjudicative function, *Boyle v. City of Bend,* 234 Or 91, 101, 380 P2d 625 (1963), so is the determination that land could or could not be benefitted by the formation of an airport district. Similarly, the application of statewide land use planning goals, which may be required by ORS 198.805(1)'s cross-reference to ORS 199.462, "is also an indication that [an] action is adjudicative." *1000 Friends of Oregon v. Wasco Co. Court,* 80 Or App 532, 536, 723 P2d 1034 (1986), *rev'd on other grounds,* 305 Or 76, 742 P2d 39 (1987), *cert den,* 486 US 1007 (1988).

■    With regard to the final *Strawberry Hill 4 Wheelers* factor—whether the decision is directed at a closely circumscribed factual situation or a relatively small number of people—an airport district that encompasses all of Coos County

does not affect a relatively small number of people. Nonetheless, "[t]he number of people affected and the size of the area covered are less important considerations." *1000 Friends of Oregon*, 80 Or App at 536. In light of the fact that the statute required the county to reach a decision based on the application of predetermined criteria to the concrete facts of the situation, the mere fact that the county exercised its district formation power to the full extent of its authority does not render its decision more legislative than quasi-judicial. Mindful of the purposes of the *Strawberry Hill 4 Wheelers* criteria, we conclude that the formation of the airport district was quasi-judicial.

That conclusion necessarily means that the trial court lacked jurisdiction of plaintiffs' declaratory judgment claim because the writ of review was plaintiffs' exclusive judicial mechanism to address the formation of the district.[11] *See Pangle*, 169 Or App at 384-85. Plaintiffs advance three additional arguments that, if correct, would avoid that result. First, plaintiffs insist that, because a writ of review may be sought only by "any party to any process or proceeding before or by any inferior court, officer, or tribunal," ORS 34.020, and because none of them was a party to or participated in the formation hearings, a writ of review was not available to them and they may therefore seek a declaratory judgment. The case that plaintiffs cite to support their argument, *Heritage Square Dev. v. City of Sandy*, 58 Or App 485, 648 P2d 1317, *rev den*, 293 Or 653 (1982), is inapposite. In *Heritage Square*, we held that a city lacked jurisdiction to form a local improvement district because it had not given the necessary notice to certain property owners. Nothing in that opinion addressed the ability of those property owners to challenge the formation of the district by writ of review.

*Strawberry Hill 4 Wheelers* provides the test to determine who may seek a writ of review:

---

[11] That ORS 198.785 itself presents an alternative method to challenge the validity of a district formation is of no import because, as previously discussed, that alternative method—set forth in ORS 33.710 and ORS 33.720—is available only to the airport district itself or to the county. The writ of review remains the exclusive means by which plaintiffs could have challenged the formation of the district.

"[A] plaintiff seeking relief against a 'transaction of county business' must show (1) that he suffered an identifiable injury to an interest of some substance, and (2) either that he participated in some form in the proceeding before the county court or that he was entitled to participate but failed to do so for lack of proper notice or other reasons beyond his control."

287 Or at 611. Further, ORS 198.735 provides:

"(1) On or before the date set for a hearing on a petition, any person interested in the proposed formation or change of organization of the district may appear and present written statements for or against the granting of the petition or the proposed change.

"(2) A written statement for or against a proposed formation or change of organization or a request for an election must be in writing, must clearly specify the defect, error, irregularity or omission to which objection, if any, is made and must be filed within the time and in the manner provided by ORS 198.705 to 198.955. Any statement not so made and filed shall be considered voluntarily waived."

In that statute, the legislature expressed a clear intent to require interested parties to participate in the district formation hearings or otherwise waive their objections to the formation decision. Here, plaintiffs could have participated in the formation hearings and thus become eligible to seek a writ of review. That they did not do so does not enable them now to circumvent the exclusivity of the writ of review to seek a declaratory judgment.

Plaintiffs' second and third arguments are related. They argue that they are challenging the voters' approval of the district, rather than the county's formation of the district, and that ORS 198.785, which provides for review of the formation decision by writ of review, does not apply. They further argue that the final order approving the formation of the district after the election was purely ministerial because ORS 198.820 required the county to form the district once the voters approved it and that any challenge to the final order would not allow them to challenge the earlier decisions of the board in which, they believe, violations of the District Boundary Procedure Act occurred.

Plaintiffs' claim for declaratory relief asserts that the "formation of the Coos County Airport District" is unconstitutional. The airport district was not formed immediately on approval by the voters; instead, it was formed on December 4, 2002, when the county issued the order that formed the district. *See* ORS 198.820(3) ("From the date of the formation order the district shall be considered established."); ORS 198.785(3) ("For the purpose of an action to determine or contest the validity of a formation * * *, the formation * * * shall be considered complete and final upon the date of the order of formation * * *."). Thus, by the terms of the complaint, plaintiffs' declaratory judgment claim challenges the county's formation order rather than the election results.

The formation order consummates the formation process and must be issued if the county determines that the majority of the votes cast in the election were in favor of district formation. ORS 198.820(1). Nonetheless, in a writ of review proceeding, "the court may review any intermediate order involving the merits and necessarily affecting the decision or determination sought to be reviewed." ORS 34.020. Thus, had they participated in the formation hearings and brought a writ of review proceeding, plaintiffs could have challenged the county's earlier orders in addition to the final formation order. A writ of review was the exclusive remedy available to plaintiffs, and the trial court therefore lacked jurisdiction of plaintiffs' declaratory judgment claim.

Affirmed.

**EDMONDS, J.,** concurring.

I agree with the majority's holdings in this case. I write separately because I believe the majority's reasoning about whether a declaratory judgment proceeding under ORS chapter 28 is an available remedy to challenge the formation of an airport district under ORS 198.785 is flawed. I will first discuss my disagreement with the majority's reasoning, followed by what I believe to be the proper analysis.

ORS 198.785 provides, in relevant part:

"(1)  If the county clerk refuses to accept and file a petition for formation [of an airport district] or for change of

organization, or if the county board refuses to call a special election as provided by ORS 198.705 to 198.955, any citizen of the affected district or territory may apply within 10 days after such refusal to the circuit court of the principal county for a writ of mandamus to compel the county board or county clerk to do so. * * *

"(2)   An action to determine the validity of a formation or change of organization proceeding may also be brought pursuant to ORS 33.710 and 33.720 or 34.010 to 34.100."

Plaintiffs brought this action pursuant to ORS 30.510 and ORS 28.010, the declaratory judgment statutes. Actions brought under ORS 30.510 and ORS 28.010 are not among the enumerated actions in ORS 198.785 to determine the validity of the formation of an airport district. I agree with the majority that no action lies under ORS chapter 30 to challenge the formation of an airport district because an action under that statute must be prosecuted by the district attorney. The remaining question therefore is whether the legislature intended that such a challenge could be made pursuant to ORS chapter 28 despite the absence of any mention of that procedural remedy in ORS 198.785.

According to the majority, *Strawberry Hill 4 Wheelers v. Benton Co. Bd. of Comm.*, 287 Or 591, 601 P2d 769 (1979), provides "the test to determine who may seek a writ of review." 201 Or App at 241. As I understand the majority's reasoning, the key to ascertaining the legislature's intent regarding ORS 838.010 and ORS 198.785, when read together, is to determine whether the determination of a challenge to the formation of an airport district is quasi-judicial or legislative in nature. Because the current version of ORS 34.020 provides that the method for obtaining judicial review of a quasi-judicial decision is exclusively through the writ of review procedure, it follows, according to the majority's reasoning, that the legislature must not have intended a declaratory judgment proceeding under ORS chapter 28 to be available to challenge the formation of an airport district under ORS 198.785 if the decision being challenged is quasi-judicial in nature.[1]

---

[1] ORS 34.020 provides, in pertinent part, that "any party to any process or proceeding before or by any inferior court, officer, or tribunal may have the decision or determination thereof reviewed for errors, as provided in ORS 34.010 to 34.100, *and not otherwise.*" (Emphasis added.)

Thus, the majority turns to the circumstances of the county's decision to determine whether the hearings held by the Coos County Board of Commissioners were quasi-judicial in nature or were part of a legislative policy-making process. The majority concludes, in part, that the statutes governing the creation of an airport district "create a quasi-judicial process in that they require the application of preexisting criteria to concrete facts." 201 Or App at 240. The final factor considered by the majority is whether the county's decision is directed at a closely circumscribed factual situation or a relatively small number of persons. It observes correctly that an airport district that encompasses all of Coos County cannot be said to affect a relatively small number of persons. *Id.* Nonetheless, the majority concludes that the number of people affected and the size of the area covered are less important considerations than the other *Strawberrry Hill* factors, relying on *1000 Friends of Oregon v. Wasco Co. Court*, 80 Or App 532, 536, 723 P2d 1034 (1986), *rev'd on other grounds*, 305 Or 76, 742 P2d 39 (1987), *cert den*, 486 US 2007 (1988). The majority concludes,

"Mindful of the purposes of the *Strawberry Hill 4 Wheelers* criteria, we conclude that the formation of the airport district was quasi-judicial."

201 Or App at 241.

A proper inquiry regarding legislative intent focuses on what the legislature intended at the time of the particular enactment and discounts later events. *Holcomb v. Sunderland*, 321 Or 99, 105, 894 P2d 457 (1995). ORS 198.785(2), pertaining to special districts generally was enacted by the legislature in 1971. Or Laws 1971, ch 727, § 22. Thereafter, the legislature enacted Oregon Laws 1975, chapter 281 relating to the formation of airport districts. Section 5 of that act provided, "An airport district formed under sections 1 to 14 of this Act shall be considered a district for all purposes in ORS chapter 198." Or Laws 1975, chapter 281 was codified as *former* ORS chapter 494. It was renumbered as ORS chapter 838 in 1989. As the majority concedes, *Strawberry Hill 4 Wheelers*, decided in 1979, and *1000 Friends of Oregon*, decided in 1986, could not have informed

the legislature's intention in 1975 when it created airport districts and made them subject to the provisions of ORS 198.785(2).

Nonetheless, the majority asserts that "the distinction between quasi-judical and legislative acts * * * has been applied to the judicial review of governmental actions in Oregon for nearly a century." 201 Or App at 237-38 n 10. However, that assertion begs the question. Historically, the debate in the courts has focused on the scope of review of a county's decisions: "Whether or how far a court may reexamine those components of a county's decision * * * that represent policy choices and might therefore be described as 'legislative' in character." *Strawberry Hill 4 Wheelers*, 287 Or at 602. But when the legislature enacts a statute that expressly incorporates the writ of review procedure, the legislature has preempted the need for a court to undertake an analysis about whether a county undertook a legislative or an adjudicative determination. By the enactment of a statute providing for such a remedy, the legislature has already made that decision for the courts. That is the case here where the legislature had designated the writ of review procedure as a means by which the county's decision can be reviewed. The only remaining question is whether the legislature intended the writ of review procedure to be the exclusive procedure along with the procedure embodied in ORS 33.710 and ORS 33.720.

That question is solely a question of legislative intent, and the principles of *Strawberry Hill 4 Wheelers* do not assist us in resolving it. Rather, by following the recognized template for ascertaining legislative intent when interpreting a statute, the proper analysis begins with an examination of the text and context of the statute itself. First, ORS 198.785 defines particular procedures for particular classes of plaintiffs. Subsection (1) of the statute provides that "any citizen of the affected district or territory" may apply for a writ of mandamus in the event that the county clerk refuses to file a petition for the formation of an airport district or in the event that the county board refuses to call a special election. Subsection (2) provides separate remedies for government entities and for citizens.

There is no "exclusivity" language in ORS 198.785 expressly making the writ of review procedure the sole procedure for a citizen's challenge to the formation of an airport district. Moreover, as the majority must acknowledge, based on its reliance on *Oregonians for Sound Economic Policy v. SAIF*, 187 Or App 621, 630, 69 P3d 742, *rev den*, 336 Or 60 (2003), when the legislature intends to communicate an intention that a particular statutory remedy is exclusive, it knows how to do that by expressly using language to that effect. For instance, as we noted in *Oregonians for Sound Economic Policy*, the Administrative Procedures Act expressly provides that " '[j]udicial review of final orders of agencies shall be solely as provided' in that Act. ORS 183.480(2)." *Id*. Indeed, in *Oregonians for Sound Economic Policy*, we refused to write into the Public Records Law, ORS chapter 192, an exclusivity provision, declining to infer such an intention in absence of express language. 187 Or App at 631. Thus, the absence of any "exclusivity" language in ORS 198.785 supports the conclusion that the legislature did not intend for the enumerated remedies to be exclusive. *See also* ORS 174.010.

On the other hand, the structure of ORS 198.785 argues for a competing conclusion. In a first-level text and context analysis, we may consider any rules of construction that bear directly on how to read the text. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-11, 859 P2d 1143 (1993). In *Scott v. Ford*, 52 Or 288, 296, 97 P 99 (1908), the court identified just such a rule: "whenever a statute limits a thing to be done in a particular form, it necessarily includes in itself a negative, *viz*., that the thing shall not be done otherwise." That rule continues to be well recognized in Oregon jurisprudence. *See Smith v. Clackamas County*, 252 Or 230, 233, 448 P2d 512 (1969), *overruled on other grounds by Whipple v. Howser*, 291 Or 475, 487, 632 P2d 782 (1981) (holding that "the inclusion of a specific matter tends to imply a legislative intent to exclude related matters not mentioned").[2] For instance, we applied that rule in *Rectenwald v.*

---

[2] *See also Owens v. MVD*, 319 Or 259, 266, 875 P2d 463 (1994) (holding that the legislature's authorization of particular challenges to the proper administration of a Breathalyzer test implies a legislative intent to exclude other kinds of challenges); *Pendell v. Dept. of Rev.*, 315 Or 608, 611, 847 P2d 846 (1993) (where the

*Snider*, 134 Or App 250, 254, 894 P2d 1242, *rev den*, 322 Or 360 (1995) (holding that, under a first-level *PGE* analysis, the use of seat belt evidence in personal injury cases arising out of a motor vehicle accident was limited to the actions and exceptions specified in the statute).

Here, it can be inferred based on the above rule of construction that the legislature intended the writ of review procedure to be the exclusive procedure for citizens to challenge the formation of the airport districts because the statute mentions no other available procedure for citizens who wish to challenge the formation of an airport district. But the fact that the legislature failed to provide expressly that the writ of review procedure was the exclusive procedure for citizens to challenge the formation of airport districts makes the statute susceptible to more than one reasonable interpretation and does not preclude doubt about what the legislature intended. To complete our task, we are required therefore to examine the statute's underlying legislative history.

My research of the legislative history includes a review of the legislative minutes from the 1971 session as well as minutes from the 1969-70 Interim Committee on Government Affairs and the 1967-68 Interim Committee on Local Government. I have found no specific history that indicates that the legislature intended the writ of review procedure to be the exclusive procedure for citizens to challenge the formation of special districts. However, what does appear generally from the legislative history is that the 1971 legislature had in mind to provide uniformity of procedures with regard to review of decisions concerning special districts: *See, e.g.*, Or Laws 1971, ch 727, § 22. That history is instructive.

ORS 198.785 was part of a bill that was initially introduced as House Bill (HB) 1022 at the request of the Interim Committee on Government Affairs. For several sessions before 1971, the legislature and its interim committees tried unsuccessfully to create uniformity in the procedures for the formation, change of boundaries, and dissolution

---

legislature express provisions for interest only under certain circumstances, that suggests that the legislature's failure to grant interest in other situations was intentional).

of special districts. *See, e.g.*, SB 42 (1969). Indeed, Representative Clayton Nyberg told the 1971 Local Government Committee of the Senate that the bill containing what would become ORS 198.785 had a 12-year history of defeat. Tape Recording, Senate Committee on Local Government, HB 1022, May 17, 1971, Tape 4, Side 2. As enacted, HB 1022 repealed a number of statutes that provided for varying ways to achieve review of district actions. *See* Oregon Laws 1971, ch 727, § 203. The same enactment that repealed other available procedures for review of special district decisions also provided for the incorporation of the writ of review procedure in ORS 198.785. Thus, it can be easily inferred from the legislative history that the creation of the writ of review remedy in ORS 198.785(2) was part of the legislature's overall intention to provide uniformity in the review procedures for most special districts. When the legislature created airport districts in *former* ORS chapter 494 in 1975 and said that, for all purposes, an airport district would be considered a special district, it is likely that it also intended that challenges to the formation of airport districts be made in the same manner as challenges to other special districts. Such an intention carries out the legislature's intention generally regarding uniformity of remedies for those who seek judicial review of decisions of special districts. I therefore concur with the majority that a declaratory judgment proceeding was not available to plaintiffs to challenge the formation of the district in this case, but based on reasoning different from that of the majority.

Linder and Wollheim, JJ., join in this concurrence.